IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Cory Edwards, | |
| *On behalf of himself and those similarly situated*, | Case No. 1:17-cv-283 |
| Plaintiff, | Judge David C. Nye |
| v. | |
| PJ Ops Idaho, LLC, *et al.*, | |
| Defendants. | |

PLAINTIFFS' SUPPLEMENT TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER (DOC. 127) AND DEFENDANTS' MOTION TO COMPEL (DOC. 126)

For 20 years, the Department of Labor articulated a clear standard for how to reimburse pizza delivery drivers who provide vehicles for their employers' benefit. *See* DOL Field Operations Handbook § 30c15(a). That standard—that companies must keep records of and reimburse for actual expenses or reimbursement at the IRS standard business mileage rate—finds its origins in Supreme Court precedent from the 1940s, and creates a neutral, bright-line rule for employers and employees to easily follow.

Once parties properly directed judges to this guidance,[1] courts began to defer to the DOL's Handbook.[2] This is exactly what the Supreme Court instructed courts to do. *Kisor v. Wilkie*, 139 S. Ct. 2400, 204 L. Ed. 2d 841 (2019).

---

[1] *See* Doc. 128, p. 10 (discussing earlier cases).

[2] *See Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 5725043, at *7 (S.D. Ohio Nov. 5, 2019), *motion to certify appeal denied* 2019 WL 7421952 (S.D. Ohio Dec. 23, 2019). *Orth v. J&J&J Pizza, Inc.,* No. 19-cv-10709, 2020 WL 1446735, *3  (D. Mass. Mar. 25, 2020) ("[c]ourts have regularly found that, consistent with the [U.S.

Rather than fight on the law and Supreme Court precedent, which favors *Hatmaker*'s holding, pizza companies turned to an activist DOL. At the behest of a pizza company, the DOL issued an Opinion Letter on August 31, 2020 that adopted the pizza company's favored "approximation" standard. The DOL's flip-flop is particularly troublesome because the DOL itself argued for the Handbook standard as recently as **six days** before issuing its Letter.[3] In fact, the DOL continues to argue that the IRS rate governs. *Id.* at Fn. 3.

This is not the first time the DOL has recently tried to alter decades-old FLSA policy. Courts recognize the DOL's flip-flops for what they are—agency overreach. Accordingly, courts have rejected the DOL's new positions.[4] This Court should do the same.

### 1. When regulations are ambiguous, the Supreme Court has instructed courts to defer to agency's reasonable interpretations.

The Supreme Court instructed courts to defer to "agencies' reasonable readings of genuinely ambiguous regulations." *Kisor*, 139 S. Ct. at 2408. Ambiguity arises because regulations may not "directly or clearly address every issue" or "when applied to some fact patterns, they may prove susceptible to more than one reasonable reading." *Id.*

---

DOL] Handbook, an employer must provide reimbursement at the IRS rate when they do not keep records of employees' actual vehicle expenses" and recognizing that the DOL Handbook constitutes "persuasive authority"); *Jiao v. Kitaku Japanese Rest., Inc.,* No. 16-cv-2694, 2020 WL 2527588, *14  (E.D.N.Y. Mar. 13, 2020); *Young v. Rolling in the Dough, Inc.,* No. 1:17-cv-07825, 2020 WL 969616, *1  (N.D. Ill. Feb. 26, 2020);  *Burton v. DRAS Ptnrs., LLC,* No. 2019-cv-02949, 2020 WL 5550579, *2-3  (N.D. Ill. Oct. 27, 2019); *Brandenburg v. Cousin Vinny's Pizza, LLC,* No. 3:16-cv-516, 2018 WL 5800594, *4  (S.D. Ohio Nov. 6, 2018); *Lin v. New Fresca Tortillas, Inc.*, No. 18-cv-3256, 2019 WL 3716199, *5  (E.D.N.Y. May 1, 2019); *Zellagui v. MCD Pizza, Inc.*, 59 F.Supp.3d 712, 716 (E.D. Pa. 2014); *Salmon v. Glass Family Pizza, Inc.*, AAA Case No. 01-19-0001-9554 (Aaron Feb. 5, 2020) (Doc. 131-2); *In the Matter of an Arbitration,* 2015 AAA Employment LEXIS 221, *59 (Finnigan Aug. 13, 2015) (basing damages on the IRS rate) attached as Exhibit 1.

[3] *Scalia v. Arizona Logistics, Inc.,* Case No. 2:15-cv-04499-DLR, Doc. 203 at p. 13, fn. 20 (D. Ariz. Jul. 8, 2020), DOL's Motion for Summary Judgment (calculating the plaintiff-delivery drivers' damages by multiplying the daily average mileage by the IRS rate); *Id.*, Doc. 214 at p. 19, fn. 11 (D. Ariz. Aug. 25, 2020), Response to Defendants' Motion (arguing that defendants' reimbursement of $.44 per mile was insufficient because it was less than the approximate IRS rate of $.55 per mile) attached as Exhibits 2-3.

[4] *See, e.g., Flores v. HMS Host Corp.*, 2019 WL 5454647, at *7 (D. Md. Oct. 23, 2019) (citing six additional cases and holding "this Court joins its sister courts in declining to accord the 2018 DOL Letter any persuasive value."); *New York v. Scalia*, No. 1:20-CV-1689-GHW, 2020 WL 5370871, at *34 (S.D.N.Y. Sept. 8, 2020).

In those situations, courts should look to an agency's reasonable construction of its own regulation. *Id.* This is particularly important when resolving the ambiguity "entail[s] the exercise of judgment grounded in policy concerns." *Id.* at 2413, *quoting Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S. Ct. 2381, 129 L. Ed. 2d 405 (1994).

2. **No matter what approach this Court takes—*Hatmaker* or *Wass*—the Regulations are ambiguous with respect to the complex question of reimbursing vehicle expenses.**

The legal question before the Court is what amount must companies reimburse minimum wage delivery drivers for vehicle-related expenses? Courts have taken two approaches with regard to examining the FLSA's Regulations. *See* Doc. 127-1, pp. 5– 11 (describing the correct *Hatmaker* approach); Doc. 128, pp. 10 – 13 (describing the incorrect *Wass* approach). Under *either* approach, the Regulations are ambiguous as applied to vehicle expenses.

3. ***Kennedy v. Mountainside* illustrates that the Regulations are, even under the *Wass* approach, ambiguous.**

Recently, a District Court in Colorado used the *Wass* approach and then erroneously ignored the Supreme Court's instructions in *Kisor*. *Kennedy v. Mountainside Pizza, Inc.*, 2020 WL 5076756 (D. Colo. Aug. 26, 2020). In attempting to use its own policy judgment rather than relying on the DOL's interpretation, *Kennedy* holds that the "term 'reasonable' allows the Court the discretion to tailor the regulation to the circumstances before it, and this Court routinely applies statutory standards of reasonableness without finding ambiguity." *Id.* at *5. This statement illustrates the problem *Kisor* aims to solve.

"Congress would generally want the agency to play the primary role in resolving regulatory ambiguities," *not* the courts. *Kisor*, 139 S. Ct at 2412. This promotes "the well-known benefits of uniformity in interpreting genuinely ambiguous rules" and honors separation of

powers principles. *See id.* at 2413 and 2422. Certainly, courts routinely interpret and determine "reasonableness" when needed. But, in a scenario involving vehicle costs, an agency is in a better position to set the rule. *Id.*

The Supreme Court itself turns to agencies when it must interpret phrases involving "reasonableness." *See, e.g., City of Arlington, Tex. V. F.C.C.*, 569 U.S. 290 (2013). In his concurrence, Justice Breyer found that the phrase "within a reasonable period of time after" was "open-ended—*i.e.*, 'ambiguous,'" and, "in context, is complex, likely making the agency's expertise useful in helping to answer the 'reasonableness' question that the statute poses." *Id.* at 311. Likewise, the phrase "costs 'recognized as reasonable'" is ambiguous. *Regions Hosp. v. Shalala*, 522 U.S. 448, 453, 458 (1998).

To avoid this result, *Kennedy* found that the term "reasonably" in Section 778.217 is "vague," but not "ambiguous." *Kennedy*, 2020 WL 5076756, at *4. The *Kennedy* court reasoned that if a term is "vague" rather than "ambiguous," then *Auer* deference would not apply. *Id.* As above, the Supreme Court has found the term "reasonable" to be ambiguous. That aside, the basis for *Kennedy*'s semantic distinction was a misreading of READING LAW.[5] *Id.*

*Kennedy* erroneously assumed that *Kisor* used READING LAW's narrow definitions.[6] *Kennedy*, 2020 WL 5076756, at *4. *Kennedy* ignores that "[w]ords are to be understood by their ordinary, everyday meanings—unless the context indicates that they bear a technical sense." READING LAW at p. 69. "[T]he loose norm is to refer to all uncertainties of meaning as

---

[5] Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, 33 (2012).
[6] "Ambiguity" is when words can have two or more different meanings. "For example, *post* can refer to a piece of timber set upright, a position of employment, or mail." READING LAW, p. 31. "Vagueness" is when a word or phrase's "unquestionable meaning has uncertain application to various factual scenarios." *Id.* at p. 32.

ambiguities." Reading Law at p. 31. Given this "loose norm," the term "ambiguity" in *Kisor* means any uncertainty unless context dictates otherwise.

It is clear that *Kisor* uses the "loose norm" of referring to uncertainties as "ambiguities." The Supreme Court defines "genuinely ambiguous" regulations as those that "may not directly or clearly address every issue; when applied to some fact patterns, they may prove susceptible to more than one reasonable reading." *Kisor*, at 2410. This is "vagueness" in Reading Law. Reading Law at pp. 31, 32. *Kisor* also provides examples of "genuine ambiguity," all of which describe vagueness, as Reading Law defines it. *Kisor*, at 2410–11. Following those examples, the Supreme Court notes that "[t]o apply the rule to some unanticipated or unresolved situation, the court must make a judgment call." *Id.* at 2411. Again, this is vagueness in Reading Law.

Moreover, "[m]ost interpretive canons apply to both ambiguity (as narrowly defined) and vagueness." Reading Law at p. 33. Thus, even if *Kisor* did not use the terms interchangeably, *Kisor*'s judicially-created cannon of interpretation (defer to agency interpretation when a regulation is ambiguous) applies to vague regulations. In any event, the analysis of *Hatmaker*— which does not delve into the inapplicable "reasonable approximation" regulation—and similar decisions is far more persuasive than *Kennedy*, and *Hatmaker* yields a practical result.

4. **Once a Court determines a statute or regulation is ambiguous, it still must determine whether the agency's interpretation is entitled to deference.**

*Kisor* provides the standard for determining when courts should defer to an agency's interpretation.

First, the agency's interpretation must be "reasonable." *Kisor*, 139 S. Ct at 2415–16. Assuming the agency's interpretation is reasonable, it must also "be one actually made by the agency. In other words, it must be the agency's 'authoritative' or 'official position,' rather than

any more ad hoc statement not reflecting the agency's views." *Id.* at 2416. "Authoritative" has a broad meaning and even covers "official staff memoranda." *Id.* (citation omitted). In contrast, ad hoc statements that do not warrant deference include speeches from mid-level officials, informal memorandum recounting telephone conversations, and a "guide" that specifically states that compliance with the guide is not required. *Id.* at 2416–17 (citing cases).

Next, the agency's interpretation must "implicate its substantive expertise." *Id.* at 2417. The further the subject matter is from the agency's area of expertise, the less deference applies. *Id.*

Finally, an agency's interpretation must reflect "fair and considered judgment." *Id.* A "court may not defer to a new interpretation, whether or not introduced in litigation, that creates 'unfair surprise' to regulated parties" or "when an agency substitutes one view of a rule for another." *Id.* at 2417–18.

### 4.1. The DOL's Field Operations Handbook resolves the Regulations' ambiguity.

Twenty years ago, the DOL addressed vehicle expenses in its Field Operations Handbook. DOL Field Operations Handbook § 30c15. As addressed in *Hatmaker*, this guidance is not only reasonable, it is likely the best and most practical way to handle the complexities of vehicle expenses. *Hatmaker*, 2019 WL 5725043, at *5–6.

The Handbook gives two, *and only two*, options. The default is to track and reimburse each driver's actual expenses. *Id.* "In lieu" of this method, employers may reimburse drivers at the IRS rate. *Id.* This "in lieu" of language is used to provide only two options: Option 1 or, in lieu of Option 1, Option 2. *See, e.g.*, DOL Field Operations Handbook § 30c07 (using "in lieu" to

denote the employer has only two possible options); see also *Salmon*, AAA Case No. 01-19-0001-9554 (Aaron Feb. 5, 2020) (Doc. 131-2).

The Handbook's approach is consistent with *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Under *Mt. Clemens*, if an employer maintains proper records, the employee may prove his or her claim based on the employer's records. *Id.* This is the "track and pay actual expenses" option.[7] If the employer has not maintained records, then the employee may prove his claim as a matter of just and reasonable inference. *Id.* This means utilizing the IRS mileage rate, which is "a data-driven and systematic methodology for estimating the cost of driving a mile." *Hatmaker*, 2019 WL 5725043, at *5.

Courts have repeatedly deferred to the Field Operations Handbook as authoritative.[8]

*Kennedy*, however, erroneously held that the Handbook is not authoritative because the Handbook's preface states that it "is not used as a device for establishing interpretive policy." *Kennedy*, at *5, citing https://www.dol.gov/agencies/whd/field-operations-handbook (accessed Aug. 26, 2020). Focusing on this sentence out-of-context ignores the rest of the preface:

> The FOH was developed by the WHD under the general authority to administer the laws that the agency is charged with enforcing. The FOH reflects policies established through changes in legislation, regulations, significant court decisions, and the decisions and opinions of the WHD Administrator.

*Id.* "The provisions of a text should be interpreted in a way that renders them compatible, not contradictory." Reading Law at p. 180.

---

[7] Employers must keep "[a]ll records used by the employer in determining the original cost, operating and maintenance cost, and depreciation and interest charges, if such costs and charges are involved in the additions to or deductions from wages paid." 29 C.F.R. 516.6(c)(2).

[8] *Hatmaker v. PJ Ohio, LLC*, 2019 WL 5725043, at *4; *Marsh v. J Alexander's LLC*, 905 F3d 610, 616 (9th Cir. 2018) (deferring to the DOL's interpretation found in the Handbook); *Flores*, 2019 WL 5454647, at *7 (rejecting a 2018 DOL Opinion Letter and, instead, deferring to a long-established rule from the Handbook); *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 532 (6th Cir. 2017) (finding the Handbook to be "persuasive authority"); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880–81 (8th Cir. 2011) (deferring to the Handbook); *Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1255 (11th Cir. 2001) (finding the Handbook "persuasive").

Here, harmonizing the three sentences is easy. The first two sentences confirm that the Handbook reflects the Wage and Hour Division's authoritative policy guidance, developed by synthesizing "legislation, regulations, significant court decisions, and the decisions and opinions of the WHD Administrator." Put into plain language, the Handbook represents what the WHD believes the law *is*. The third sentence means that the WHD does not use the Handbook to *establish*[9]—*i.e.*, to institute—new policies.

> Although the introduction to the FOH contains this language, the context makes clear that it states this, because ***the DOL may not immediately update the FOH "through*** changes in legislation, regulations, significant court decisions, and the decisions and ***opinions of the WHD administrator***." Field Operations Handbook, https://www.dol.gov/whd/foh (last visited June 1, 2017). Furthermore, the FOH provides links to "*other* interpretive guidance," which supports the notion that the DOL treats the FOH as interpretative guidance. *Id.* (emphasis added). The DOL has also consistently taken the position in its amicus briefs, including the brief filed in this case, that the FOH is interpretive guidance. *See* Br. for the Secretary of Labor as *Amicus Curiae* in Support of Plaintiff–Appellant at 19, *Romero v. Top–Tier Colo., LLC*, 849 F.3d 1281 (10th Cir. 2017) (No. 16–1057) ("Opinion letters, FOH provisions, and amicus briefs have been among the Department's tools for issuing interpretations of regulations to which *Auer* deference is due."). Therefore, contrary to Defendants' contention, the DOL has made clear that it treats the FOH as interpretive guidance.

*Romero v. Top-Tier Colorado LLC*, 274 F. Supp. 3d 1200, 1207 (D. Colo. 2017) (emphasis added).

### 4.2. The DOL's August 31, 2020 Letter is entitled to no deference.

Whether analyzed under *Kennedy* or *Hatmaker*, the Regulations are ambiguous. The only question left is whether the Court should defer to the Handbook or the DOL's new, contradictory August 31, 2020 Opinion Letter. This Letter is not entitled to deference under *Kisor* for multiple, independently sufficient reasons.

---

[9] "Establish" means "to institute (something, such as a law) permanently by enactment or agreement." https://www.merriam-webster.com/dictionary/establish (accessed Sept. 5, 2020).

First, the Letter's interpretation of the FLSA's regulation is not reasonable. This is partially covered in the prior briefing and the reasoning in *Hatmaker*. Basically, a "reasonable approximation" standard is ambiguous and frustrates enforcement of minimum wage rights.[10] Full treatment here would require more space, but as an obvious example, the Letter relies upon a "regular rate" regulation, Section 778.217(c)(2)(i), and states that a "regulation that explicitly allows employers to approximate expenses at a rate lower than the IRS standard rate cannot be read to require employers to use the IRS standard rate." Letter, at p. 3. The "cap" signals that the regulation relates to only preventing employers from using disproportionately large reimbursements to avoid overtime obligations. In that context, a "cap" or maximum reimbursement calculation makes sense—it is designed to *protect* employees from improperly inflated "expense" payments that serve to drive *down* their overtime rate. A "cap" has no place in minimum wage compliance—an employer can always pay more than the minimum.

Second, the Letter does not "implicate [the DOL's] substantive expertise" because it simply endorses an ambiguous legal standard. *Kisor*, 139 S. Ct. at 2417. This is not guidance at all. but, instead, agency overreach into the judiciary's domain. As *Kisor* details, courts should not defer to an agency's interpretation when it is merely a "convenient litigating position." *Id.* at 2417–18.[11] Here, the agency endorsed the pizza industry's litigating position in the midst of numerous lawsuits on this issue and a flurry of judicial rulings holding that the IRS rate governs.

Third, "a court may not defer to a new interpretation, whether or not introduced in litigation, that creates 'unfair surprise' to regulated parties." *Id.* Likewise, deference is rarely appropriate when "an agency construction 'conflict[s] with a prior' one." *Id.* Here, after two

---

[10] *FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 32 (1981) (courts "must reject administrative constructions of the statute . . . that frustrate the policy that Congress sought to implement.").

[11] *See, e.g., O'Neal v. Denn-Ohio, LLC,* No. 3:19-cv-280, 2020 WL 210801, at *7 (N.D. Ohio Jan 14, 2020).

decades of the DOL prescribing that binary choice for minimum wage compliance and its recent reaffirmation of the same standard in *Scalia*, the DOL suddenly announced that it permits a third, ambiguous standard for compliance—contrary to the DOL's own recent briefing.[12] An agency interpretation that "conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 447 n.30 (1987) (quoting *Watt v. Alaska,* 451 U.S. 259, 273 (1981); *NRDC v. U.S. EPA,* 526 F.3d 591, 602 (9th Cir. 2008) (quoting *INS*, 480 U.S. at 447 n.30). In fact, the Supreme Court has "declined to follow administrative guidelines in the past where they conflicted with earlier pronouncements of the agency." *Gen. Elec. Co. v. Gilbert,* 439 U.S. 125, 143 (1976).

To the extent that the Letter is afforded any deference at all, it should not apply retroactively. "When … an administrative rule is at issue, the inquiry is two-fold: whether Congress has expressly conferred power on the agency to promulgate rules with retroactive effect and, if so, whether the agency clearly intended for the rule to have retroactive effect." *Elim Church v. Harris,* 722 F.3d 1137, 1141 (9th Cir. 2013) (citing *Durable Mfg. Co. v. DOL,* 578 F.3d 497, 503 (7th Cir. 2009)); *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204 (1988). There is no authority for retroactive application of a DOL opinion letter. *See Berger v. Perry's Steakhouse of Ill.,* 430 F.Supp.3d 397, 412-13 (N.D. Ill. 2019).

**5. Conclusion**

Plaintiffs respectfully ask that the Court hold that the Free and Clear Regulation is ambiguous as applied to vehicle costs and, accordingly, defer to the DOL's interpretation in the Handbook.

---

[12] *Arizona Logistics, Inc.,* Case No. 2:15-cv-04499-DLR, Doc. 203 at p. 13, fn. 20 (D. Ariz. Jul. 8, 2020), DOL's Motion for Summary Judgment; *Arizona Logistics, Inc.,* Case No. 2:15-cv-04499-DLR, Doc. 214 at p. 19, fn. 11 (D. Ariz. Aug. 25, 2020), Response in Opposition to Defendants' Motion for Summary Judgment.

10

Respectfully submitted,

*/s/ Phil Krzeski*

Andrew R. Biller (0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*
www.billerkimble.com

Paul LLP
Richard M. Paul III
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone:    (816) 984-8100
Facsimile:    (816) 984-8101
Rick@PaulLLP.com

WEINHAUS & POTASHNICK
Mark Potashnick
(admitted *pro hac vice*)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone:    (314) 997-9150
Facsimile:    (314) 997-9170
markp@wp-attorneys.com

Jeff Hepworth
Hepworth Law Offices
2229 W. State St. Boise, ID 83702
208-333-0702 (Phone)
208-246-8655 (Fax)

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of September, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means vie email.

*/s/ Phil Krzeski*

Philip J. Krzeski