# EXHIBIT 1



**User Name:** MARK POTASHNICK
**Date and Time:** Friday, September 25, 2020 11:20:00 AM EDT
**Job Number:** 126247519

## Document (1)

1. *2015 AAA Employment LEXIS 221*
   **Client/Matter:** -None-
   **Search Terms:** 2015 AAA Employment LEXIS 221
   **Search Type:** Natural Language

## *2015 AAA Employment LEXIS 221*

AMERICAN ARBITRATION ASSOCIATION

August 13, 2015, Decided

*AAA Employment Arbitration Awards*

**Reporter**
2015 AAA Employment LEXIS 221 *

## Copyright 2018 American Arbitration Association, All Rights Reserved.

## Core Terms

claimant, arbitrator, delivery, reimburse, minimum wage, mileage, attorney's fees, vehicle-related, hourly rate, under-reimbursed, formula, driver, per hour, reimbursement rate, cents per mile, chart, posthearing, time period, pizza, estimate, per mile, drove, hourly wage, prevailing, travel-related, vigorous, offset, drive, spend, discovery

**Hearing Location:** Florida

**Prevailing Party:** Employee

**Topics:** Wage and Hour

**Industries:** Restaurant/Bars

**Substantive Award:** $ 1 - $ 24,999

## Counsel

 **[*1]**  For Claimant: Mr. Frei-Pearson.

2015 AAA Employment LEXIS 221, *1

**Opinion By:** John Finnigan, Arbitrator

# Opinion

**Employment Arbitration  Tribunal**

**AWARD OF ARBITRATOR**

I, John Finnigan, the undersigned Arbitrator,  (hereinafter referred to as the "Arbitrator" ) in the subject Arbitration proceeding was designated and appointed as Arbitrator  pursuant to the arbitration  provision of the Respondents', Respondent A and Respondent B (hereinafter collectively referred to as "Respondents" or "the company") Agreement to Arbitrate dated September 16, 2003, under which the Claimant, (hereinafter referred to as "Claimant") is pursuing his demand for arbitration.

The Arbitrator  duly executed his Oath as Arbitrator.  The Arbitration   proceeding was administered under the Employment Arbitration  Rules of the American Arbitration  Association.

The Arbitrator  has read and reviewed the pleadings, the transcript of the Arbitration  hearing and the exhibits admitted into evidence at the hearing and the other submissions of the parties including both parties' post hearing briefs and copies of the legal authority cited therein and submitted therewith that were filed with the Arbitrator  on October 22, 2014. The Arbitrator  has further heard the **[*2]**  proofs of the parties during the two (2) day Arbitration hearing [1] held in City A, State A on Wednesday, August 27, 2014, and on Thursday, August 28, 2014.

The Arbitrator  has also now received, reviewed and considered Claimant's Motion for Reasonable Attorneys' Fees and Costs along with supporting exhibits and cited authorities dated April 17, 2015, Respondents' Motion to strike or deny Claimant's Motion for Attorneys' Fees, or in the Alternative, to compel Claimant to provide supporting documentation filed on April 27, 2015, Claimant's opposition to Respondents' Motion to strike or deny Claimant's application for attorneys' fees and Claimant's Cross-Motion for additional attorneys' fees filed on May 1, 2015, Respondents' Response to the Claimant's Motion for Attorneys' Fees and Costs filed on May 8, 2015, and, Claimant's Reply in support of his Motion for reasonable fees and costs filed on May 26, 2015.

As part of the Claimant's Motion for Reasonable Attorneys' Fees and Costs, Claimant also filed the following Exhibits: Exhibit A -- a copy of Claimant's counsel, Mr. Frei-Pearson, firm resume which contains Mr. Frei-Pearson's biography; Exhibit B -- a true and correct copy of Mr.  **[*3]**  Frei-Pearson's billing  statement (redacted to protect client privacy) showing that in 2014 Mr. Frei-Pearson billed an hourly  client at his rate of $ 650.00 per hour; Exhibit C -- Mr. Frei-Pearson's detailed and contemporaneous time records for the time-keepers in his law firm for which Claimant is seeking compensation; Exhibit D -- Morgan & Morgan's detailed and contemporaneous time records for the time-keepers in that law firm for which Claimant is seeking compensation; and, Exhibit E -- Kelly Casey's detailed and contemporaneous time records.

As part of the Respondents' Response to the Claimant's Motion for Attorneys' Fees and Costs Respondents also filed the following Exhibits: Exhibit 1 -- pages 1-4, 9-12 and 21-24 of the hearing transcript; Exhibit 2 -- Affidavit of Deborah L. Moskowitz; Exhibit 3 -- Kelly Casey's billing  records (which is the same as Exhibit "E" attached to

---

[1] A Court Reporter was present at the Arbitration  hearing in this case and a transcript of the proceeding was prepared and adopted as the official record. I received a copy of the Court Reporter's transcript and I have copies of all of the exhibits that were entered into evidence at the hearing. Any specific references to the transcript in this Award will be referred to by page references. Any specific references to the exhibits entered into evidence at the hearing will be referred to by the presenting party and their exhibit number.

Claimant's Motion); and, Respondents' Charts 1-13 which set forth Claimant's counsels' specific time entries that Respondents used to calculate the contested billing figures that are set forth in Respondents' Response.

As part of the Claimant's Reply in support of his Motion for reasonable fees and costs, **[*4]** Claimant also filed the following Exhibits: 1) Declaration of Claudia Silva in support of Claimant's Application for Reasonable Attorneys' Fees and Costs; and, 2) Declaration of Kelly D. Casey in support of Claimant's Application for Reasonable Attorneys' Fees and Costs.

As part of the Claimant's opposition to Respondents' Motion to strike or deny Claimant's application for attorneys' fees and Claimant's Cross-Motion for additional attorneys' fees, Claimant also filed an Affidavit of Jeremiah Frei-Pearson in support of Claimant's opposition to Respondents' Motion to strike or deny Claimant's application for attorneys' fees and Claimant's Cross-Motion for additional attorneys' fees.

In addition to the above referenced exhibits, the parties also filed copies of the legal authority cited in their filings. Pursuant to the foregoing, the Arbitrator hereby enters the following reasoned final Award. [2] [3]

## Introduction

This Arbitration proceeding involves a two count claim by Claimant that Respondents violated the Florida Minimum Wage Act, Fla. Const. Art. 10 § 24, and Fla. Stat. § 448.110 et seq. (hereinafter collectively referred to as "FMWA") and that it was unjustly enriched **[*5]** because Respondents under-reimbursed him for his vehicle-related expenses that he incurred as a delivery driver thereby resulting in him being effectively paid below the FMWA minimum wage. Claimant was employed by Respondents at a store in City B, State A as a delivery driver from July 30, 1994, to December 7, 2009.

Claimant claims that he should now be reimbursed for the miles he drove making pizza deliveries for Respondents during the time period at issue in this case at the IRS standard business mileage rate. Claimant is seeking reimbursement of his miles driven at the IRS standard business mileage rate as neither Respondents nor he maintained any records of the actual costs of his driving related expenses for the time period at issue.

Claimant claims that Respondents' uniform formula (hereinafter referred to as the "uniform formula" or the "Runzheimer computation" ) failed to adequately reimburse him for the vehicle-related expenses that he incurred as a delivery driver for Respondents. Claimant claims that Respondents' uniform formula did not approximate reasonably his vehicle-related expenses in that the formula under estimated both the average miles per delivery and the per **[*6]** mile expense rate in order to arrive at its per delivery reimbursement rate that Claimant was paid as a delivery driver for the company. Claimant claims that if Respondents had reimbursed him at the proper rate for all of the miles that he drove for the company as a pizza delivery driver during the period at issue and now using the IRS standard business mileage rate that he should have been reimbursed a total of $ 19,285.02. Claimant claims that Respondents only reimbursed him for his vehicle-related expenses under its uniform formula for a total of approximately $ 5,793.71. Accordingly, Person A claims that Respondents under-reimbursed him by a total of $ 13,491.31.

---

[2] This Award is based in part on the content of the parties' post hearing briefs that were submitted as proposed findings of fact and conclusions of law by both advocates for the parties and as requested by the Arbitrator. Claimant's counsel filed a fifty-six (56) page brief and Respondents' counsel filed a twenty-nine (29) page brief. Both advocates' briefs were very well written and argued with extensive references to the hearing transcript and exhibits and to supporting legal authority. However and obviously, the advocates for the parties presented vastly contrasting findings of fact and conclusions of law in this hotly contested Arbitration case.

[3] The Arbitrator previously entered an interim Award in this Arbitration proceeding on November 26, 2014. The interim Award was in full settlement of all claims submitted in this Arbitration only except for the remaining determination of the Claimant's reasonable attorneys' fees and his costs in this action. This final Award addresses and decides the remaining determination of the Claimant's reasonable attorneys' fees and his costs on this action. The Arbitrator's decision in the interim Award is unchanged except for addressing and deciding the remaining determination of the Claimant's reasonable attorneys' fees and his costs in this action as is now set forth in this final Award.

## Governing Law

Article 10, Section 24 of the Florida Constitution provides that working Floridians are entitled to be paid a minimum wage, and the FMWA provides the measures to implement the Constitutional provision. *See* Fla. Stat. § 448.110. Case law, administrative interpretations, and other guiding standards developed under the Federal Fair Labor Standards Act ("FLSA") guide construction of the FMWA. Fla. Const. Art. 10 § 24 (b) and (f).

Neither the FMWA nor the FLSA actually requires employers to **[*7]** reimburse employees for expenses that they incur related to their employer's business and, as a result, there is no cause of action under the FMWA or the FLSA for an employer's under-reimbursement of expenses. In order to establish Respondents' liability under the FMWA in the instant case, Claimant must prove that he was under-reimbursed for vehicle costs that he incurred primarily for the benefit of Respondents and that the under-reimbursement caused his wages to fall below the minimum wage rate. *See* 29 U.S.C. § 206(a); 29 C.F.R. § 531.36(b) (recognizing that it is only "to the extent that [deductions or insufficient reimbursements] reduce the wages of the employee in any such workweek below the minimum required by the Act [that] they are illegal").

A Court has recognized that the applicable regulations also permit an employer that is administering a vehicle expense reimbursement program to approximate reasonably the amount of the employee's vehicle expenses without affecting the amount of the employee's wages for purposes of the federal minimum wage. *See Wass v. NPC Int'l, Inc., 688 F. Supp.2d 1282, 1286 (D. Kan. 2010)* (holding that **[*8]** "the applicable regulations also permit an employer to approximate reasonably the amount of an employee's vehicle expenses without affecting the amount of the employee's wages for purposes of the federal minimum wage law"). In the *Wass* case decision, the Court also went on to state that neither party in that case was able to cite to a case that directly addressed the application of the "reasonable approximation" standard to reimbursement of expenses for purposes of a minimum wage claim. Under the *Wass* case decision, if that case was controlling as to Claimant's claim, Claimant would have to show in the instant case that Respondents failed to make a reasonable approximation of his vehicle-related expenses in formulating its vehicle use reimbursement formula using the Runzheimer computation.

Respondents stated in its post hearing brief that because employers must design broadly applicable nationwide reimbursement programs that cover a variety of employees who each incur different costs, that courts have recognized in the applicable regulations a "safe harbor" for employers administering expense reimbursement programs that applies where the company "reasonably approximated" its **[*9]** employee's expenses. *Citing Wass at 1286.* The *Wass* decision does not contain any safe harbor language that Respondents is seeking protection under for its vehicle-expense reimbursement formula based on the Runzheimer computation that the company used to pay Claimant's vehicle-related expenses for his pizza deliveries in the instant case.

The Department of Labor's ("DOL") Field Operations Handbook ("FOH") has a section on the proper payment of minimum wages that is subtitled **Car expenses - employee's use personal car on employer's business**. The DOL FOH states in Section 30c15 that "[i]n some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine MW [minimum wage] compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants."

Section 30c15 of the DOL FOH also states that "[a]s an enforcement policy, the Internal Revenue Service (IRS) standard business mileage rate found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or **[*10]** evaluate the employer's wage payment practices for FLSA purposes. The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees...." (emphasis in the original).

The Florida Constitution states that "...[i]t is intended that case law, administrative interpretations, and other guiding standards developed under the federal FLSA shall guide the construction of this amendment and any implementing statutes or regulations." Fla. Const. Art. 10 § 24(1). The DOL is the "administrative agency . . . which has jurisdiction over FLSA claims." *Owen v. Bristol Care, Inc., 702 F.3d 1050, 1053 (8th Cir. 2013)*. In the FLSA context,

2015 AAA Employment LEXIS 221, *10

the Eleventh Circuit and other courts "have noted that the DOL's Field Operations Handbook is persuasive, even though it is not entitled to *Chevron* deference." Morgan v. Family Dollar-Stores, Inc., 551 F.3d 1244, 1274 n.65 (11th Cir. 2008) (citing *Klinedinst v. Swift Invest., Ind., 260 F.3d 1251, 1255 (11th Cir. 2001)*); *see, e.g., Fast v. Applebee 's Int'l, Inc., 638 F.3d 872, 874 (8th Cir. 2011)* **[*11]** (affirming the denial of a motion for summary judgment in which the District Court concluded that the Department of Labor (DOL)'s interpretation of the FLSA as contained in the Wage and Hour Division's Field Operations Handbook (Handbook) was reasonable, persuasive, and entitled to deference).

Claimant's under-reimbursement allegation and claim in this case has been the subject of other reported Court decisions involving minimum wage related claims and the proper method by which a delivery driver should be reimbursed for the business use of their automobile in order to satisfy the federal minimum wage requirement under the federal Fair Labor Standards Act ("FLSA") and the FMWA. *See Hanna v CFL Pizza, LLC, No. 11-1837, 2012 WL 515875, at *5 (M.D. Fla. Jan. 30, 2012)*, *report and recommendation adopted, No. 11-1837, 2012 WL 513017 (M.D. Fla. Feb. 16, 2012)*, (Magistrate Judge Baker stated in his report and recommendation that the under-reimbursement issue in that case is not "complex" and is, in fact, not much more than a simple mathematical equation taking into consideration that Plaintiff's evidence or estimates of vehicle-related expenses); *Smith* **[*12]** *v. Pizza Hut, Inc.*, No. 09-cv-1632- CMA-BNB, 2011 WL 2791331, *1 (D. Colo. July 14, 2011) (holding that the plaintiff could rely on an estimate of 35 cents per mile for his vehicle-related expenses to support his claim that he was paid below minimum wage) ; Perrin v. Papa John's Intern., Inc., 181 F. Supp. 2d 1146 (E.D. Mo. 2011) (for class certification purposes, accepting the plaintiff's average mileage per delivery as applied to the maximum reimbursement rate for a result of approximately 23 cents to 30 cents per mile versus actual automobile expenses of at least 40 cents per mile, which resulted in an effective hourly wage of less than the required minimum wage) .

**The Mathematical Equation**

The mathematical equation that Magistrate Judge Baker referred to in the *Hanna* case is explained well in the Court's decision in the *Smith v. Pizza Hut, Inc.* case. [4] In the *Smith v. Pizza Hut, Inc.* case, the District Judge reviewed and explained the mathematical equation as follows.

"1. *Plaintiffs Individual FLSA Claim*

Plaintiff alleges that his under-reimbursed vehicle-related expenses constituted a kickback because Defendant failed **[*13]** to reasonably approximate his vehicle-related expenses and Plaintiff was specifically required to use and maintain a vehicle to benefit Defendant's business. Plaintiff further alleges that this kickback led to Plaintiff's wage being reduced below the minimum wage. Plaintiff supports his claims by asserting that he has documented vehicle-related expenses of $ 0.35 per mile, excluding wear-and-tear and depreciation of value. Plaintiff also alleges that a reasonable estimate of his total vehicle-related expenses, including wear-and-tear and depreciation, would be $ 0.58 per mile, the 2008 IRS business mileage rate, which was the highest rate for all relevant time periods. *See* IRS Announcement Ann.2008-63, 2008 WL 2486517 (June 23, 2008). Although Defendant does not appear to directly contest Plaintiff's individual FLSA claim, Defendant argues that Plaintiff's reliance on the IRS business mileage rate as a substitute for actual vehicle-related expenses is a conclusory allegation that must be disregarded. However, the Court need not decide at this stage in the proceedings whether Plaintiff's reliance on the 2008 IRS business mileage rate is reasonable because the Court **[*14]** finds that Plaintiff may rely on his $ 0.35 per mile estimate and based on this estimate, Plaintiff, individually, has alleged facts sufficient to create the plausible inference that Defendant violated the FLSA<FN4>

FN4. Defendant does not argue that Plaintiff's $ 0.35 estimate should be disregarded. Additionally, the Court finds, as it did in *Darrow*, that Plaintiff may rely on a reasonable estimate of his vehicle-related expenses without knowing his exact expenses. *See Darrow, 2011 WL 2174496, at *3*.

---

[4] The *Smith v. Pizza Hut* case is also cited by counsel for both parties in the post-hearing briefs that they filed in this case.

MARK POTASHNICK

This Court finds that Plaintiff has stated a plausible claim that Defendant failed to reasonably approximate his vehicle-related expenses. Plaintiff alleges that he was reimbursed at a rate of $ 0.96 per delivery on average from August 2008 to January 2009. Plaintiff further alleges that he drove an average of five miles per delivery. Accepting these factual allegations as true, and using the estimate of Plaintiff's vehicle-related expenses of $ 0.35 per mile, Defendant's reimbursement formula under-reimbursed Plaintiff in the amount of $ 0.79 per delivery or $ 1.89 per hour in 2009 (($ 0.35 per mile x 5 miles per delivery) - $ 0.96 per delivery) . This amount of **[*15]** under-reimbursement is a large enough gap to support the claim that Defendant failed to reasonably approximate Plaintiff's expenses. *See* [*Wass (Wass I), No. 09-2254, 2010 U.S. Dist. LEXIS 141978, at *7 (D. Kan. Sept. 1, 2010)*](finding an under-reimbursement of $ 1.62 per hour significant enough to support the claim that the defendant failed to reasonably approximate the plaintiff's expenses).

The Court further finds that Plaintiff has alleged facts sufficient to demonstrate that he was paid below the federal minimum wage as a result of the under-reimbursement. Plaintiff alleges that he was paid $ 7.50 per hour from August 2008 to January 2009. The federal minimum wage was $ 6.55 per hour during that time. If Plaintiff was paid $ 7.50 per hour, was reimbursed at a rate of $ 0.96 per delivery, and completed 2.4 deliveries per hour, then Plaintiff was compensated, on average, $ 9.80 per hour. Based on the facts alleged in the SAC, Plaintiff incurred vehicle-related expenses in the amount of $ 4.20 per hour to complete 2.4 deliveries (2.4 deliveries x ($ 0.35 per mile x 5 miles per trip)). After deducting Plaintiff's vehicle-related expenses from his wage, including the **[*16]** delivery reimbursement, Plaintiff alleges that he earned only $ 5.60 per hour ($ 9.80-$ 4.20), which was $ 0.95 below the federal minimum wage during the relevant time period. Therefore, the facts alleged in the Second Amended Complaint create the plausible inference that Defendant paid Plaintiff below the federal minimum wage as a result of Defendant's under-reimbursement of Plaintiff s vehicle-related expenses."

## Legal Analysis of Claimant's FMWA Claim

As set forth above, in order for Claimant to prevail on his claim that Respondents violated the FMWA minimum wage he must prove that Respondents under-reimbursed him for his vehicle expenses and that the under-reimbursement actually resulted in Claimant being effectively paid below the FMWA minimum wage. In other words, Respondents was required to sufficiently reimburse Claimant for the vehicle-related expenses that he incurred when making deliveries such that his hourly wage did not fall below the FMWA statutory minimum wage when those expenses are taken into account. Ultimately, the testimony and exhibits that the parties presented as their evidence at the Arbitration hearing must prove that Respondents properly reimbursed **[*17]** Claimant for his vehicle-related expenses such that he was not under-reimbursed for his vehicle-related expenses thereby resulting in him falling below the FMWA minimum wage.

In order to reach the conclusion that Respondents properly reimbursed Claimant for his vehicle-related expenses under its formula using the Runzheimer computation, the proof process using some of the above referenced mathematical equation and explanation from the *Smith v. Pizza Hut* case is as follows.

    1. What was the State A minimum wage during the time period that Claimant was a delivery driver for Respondents during the relevant FMWA statute of limitations period that Claimant is claiming that he fell below the FMWA minimum wage which is from November 1, 2006, to December 7, 2009, and how much was Claimant paid hourly by Respondents during that time period relative to the minimum wage?

In Claimant's post hearing brief, Claimant provided the below referenced table that sets forth the minimum wage in State A during the time period at issue in this case. The table also sets forth and compares Claimant's hourly wage paid to him by Respondents during the same time period.

| Date | Initial Hourly Wage | Minimum Wage | Difference |
|---|---|---|---|
| Nov. 1, 2006-Dec. 31, 2006 | $ 7.35 | $ 6.40 | $ 0.95 |
| Jan. 1, 2007-Sept. 3, 2007 | $ 7.35 | $ 6.67 | $ 0.68 |
| Sept. 4, 2007-Dec. 31, 2007 | $ 7.65 | $ 6.677 | $ 0.98 |
| Jan. 1, 2008-Sept. 1, 2008 | $ 7.65 | $ 6.79 | $ 0.86 |
| Sept. 2, 2008-Dec. 31, 2008 | $ 8.00 | $ 6.798 | $ 1.21 |

2015 AAA Employment LEXIS 221, *17

| Date | Initial Hourly Wage | Minimum Wage | Difference |
|---|---|---|---|
| Jan. 1, 2009-July 23, 2009 | $ 8.00 | $ 7.219 | $ 0.79 |
| July 24, 2009-Aug. 31, 2009 | $ 8.00 | $ 7.25 | $ 0.75 |
| Sept. 1, 2009-Dec. 7, 2009 | $ 8.10 | $ 7.25 | $ 0.85 |

[*18]

Ex. C - 20.

Based on the above referenced table, Respondents paid Claimant an hourly wage near the State A minimum wage during the time period at issue in this case. Accordingly, that leaves very little room for Claimant to potentially fall below the State A minimum wage during the time period at issue in this case if Respondents under-reimbursed Claimant for his vehicle-related expenses under its formula based on the Runzheimer computation.

2. Did Respondents' method and formula using the Runzheimer computation for reimbursing Claimant for his vehicle-related expenses reasonably approximate and thereby properly reimburse him for his vehicle-related expenses?

Claimant claims that Respondents' formula based on the Runzheimer computation underestimated the reimbursement rate per delivery for his delivery area firstly by incorrectly assuming that the average delivery was 2.5 miles which is part of the Runzheimer computation based on a Respondents store in State B that averaged 3.0 miles per delivery. [5]

During the hearing and in his post hearing brief, Claimant cited to Respondents' own company records called Driver Activity Reports and Driver Dispatch Cash Audit Reports for Claimant's [*19] deliveries that show him as driving 5 miles per delivery. Ex. C -- 23 at Claimant 001065; Ex. C - 24 at Claimant 000857. The Driver Activity Reports that were presented into evidence at the hearing reflect that Claimant drove 14,417 miles and that he made 2,644 deliveries for an average of 5.45 miles per delivery. Ex. J - 5. At the hearing, Respondents asserted that Claimant's average mileage of 5 miles per delivery as set forth on the company's Driver Activity Reports was inaccurate. Tr. at 351. The Driver Dispatch Cash Audit Reports that were presented into evidence at the hearing reflect that Claimant drove 1,560 miles and that he made 302 deliveries for an average of 5.17 miles per delivery. Ex. C - 14.

Claimant presented evidence at the hearing that Respondents' Guest Check Data for Claimant's store show that all of the drivers from that store made approximately 10,331 deliveries and they drove approximately 42,530 miles for an average of 4.11 miles per delivery. Ex. C - 17. Claimant testified at the hearing that he typically drove more than 5 miles per delivery. Tr. at 263. Claimant also testified at the hearing that he has driven more than 10 miles round trip to make a delivery [*20] and that he routinely made deliveries that were to locations that were much further than 5 miles round trip from the store. Tr. at 263. Respondents did not provide testimony from any witnesses at the hearing with personal knowledge to counter Claimant's testimony that he drove over 5 miles per delivery.

Claimant also claims that the Respondents formula underestimated Claimant's per mile expense rate because the company did not use driver-specific expense records or the IRS rate as required by DOL FOH Section 30c15 subtitled **Car expenses -- employee's use personal car on employer's business**. Instead of Respondents using Claimant's actual vehicle-related expenses or the IRS rate, Respondents' formula was based on its delivery drivers driving a certain vehicle, a new Toyota Camry, with certain estimated driving-related expenses related to the costs of driving that vehicle. Respondents' per delivery reimbursement rate resulted in an expense rate of

---

[5] Respondents presented evidence at the Arbitration hearing that the Runzheimer computation had various cushions in the formula including that the computation increased the average delivery to 3.75 miles. However, Respondents' counsel who testified at the hearing also conceded on cross examination that if a driver delivered a single order that the formula used an average of 2.50 miles per delivery. Tr. at 331 - 332.

2015 AAA Employment LEXIS 221, *20

between 13.5 and 19.1 cents per mile  in Claimant's case, using his average of 5.4 miles  per delivery  and Respondents' reimbursement rate  of between 73 and 1.03 cents per delivery.

In Claimant's post hearing brief, Claimant states **[*21]** that Respondents reimbursed  him and the other pizza delivery  drivers  a fixed amount during the time period  at issue in this case that ranged from $ 0.73 to $ 1.03 per delivery.  Ex. C - 1, page 3 of Claimant's post hearing brief.

In Respondents' post hearing brief, Respondents states that during the period from September 2008 through December 2009, that it paid Claimant reimbursements  that ranged from $ 0.81 to $ 1.03 per delivery,  in addition to his hourly rate,  for vehicle expenses he incurred in performing his duties as a delivery  driver.  Tr. at 254, 257; Ex. J - 5, proposed finding of fact number 55, page 7 of Respondents' post hearing brief.

In simplistic terms and using the above referenced  figures of $ 0.73, $ 0.81 and $ 1.03 per delivery  that Claimant was paid and using both Respondents' and Claimant's respective per delivery   mileage  estimate  figures  of 2.5 miles  per delivery  (Respondents' figure) and 5.45 miles  per delivery  (Claimant's figure), the cost per mile  that Claimant was reimbursed  is as follows.

**Respondents' mileage  rate**: $ 0.73 divided by 2.5 miles  = $ 0,292 cents per mile

$ 0.81 divided by 2.5 miles  = $ 0,324 cents per mile

$ 1.03 divided **[*22]** by 2.5 miles  = $ 0,412 cents per mile

**Claimant's mileage  rate**: $ 0.73 divided by 5.4 miles  = $ 0,135 cents per mile

$ 0.81 divided by 5.4 miles  = $ 0,150 cents per mile

$ 1.03 divided by 5.4 miles  = $ 0,191 cents per mile

At the arbitration   hearing, Respondents presented expert opinion testimony of Witness, an economist and statistician, who developed a model that he used to determine Claimant's per mile  driving expenses when making deliveries  for Respondents which Witness determined were in the range of $ 0.2553 - $ 0.3361 cents per mile.  Ex. R -- 39, Tr. at 399. Witness' mileage  rate range is approximately double the above referenced   computations set forth by Claimant based on his average delivery   mileage  of 5.4 miles  per delivery  and it is closer to the mileage rates which are based on Respondents' formula  using the Runzheimer computation  which is based on an average delivery  mileage  of 2.5 miles  per delivery.

In Claimant's post hearing brief, he provided the table below of the IRS standard business mileage  rate during the period that he is now claiming he should have been paid at that rate for all of his miles  driven making Respondents deliveries  **[*23]** as opposed to the per delivery  rate that he was paid under Respondents' formula  based on the Runzheimer computation.  As the table below shows, the IRS standard business mileage  rate during the period that Claimant is now claiming he fell below the FMWA minimum wage  ranges from a beginning rate of $ 0,445 cents per mile  to an ending rate of $ 0,550 cents per mile  with other intermittent mileage  rates during that time period  of $ 0,485, $ 0,505 and $ 0,585. The IRS standard business mileage  rates are considerably higher than Respondents' effective mileage  rate per delivery  that Claimant was paid based on an average of 2.5 miles  per delivery  that Claimant is claiming he was paid by Respondents. In addition, the IRS standard business mileage rates are also considerably higher than Respondents' effective mileage  rate per delivery  that Claimant was paid based on an average of 5.4 miles  per delivery  that Claimant is claiming that he drove  making deliveries  for Respondents.

| DATE | IRS RATE |
|---|---|
| 11/1/06 - 12/11/06 | $ 0,445 |
| 12/12/06 - 12/31/06 | $ 0,445 |
| 1/1/07 - 3/19/07 | $ 0,485 |
| 3/20/07 - 4/30/07 | $ 0,485 |
| 5/1/07 - 12/31/07 | $ 0,485 |

MARK POTASHNICK

2015 AAA Employment LEXIS 221, *23

| DATE | IRS RATE |
|---|---|
| 1/1/08 - 3/19/08 | $ 0,505 |
| 3/20/08 - 6/2/08 | $ 0,505 |
| 6/3/08 - 6/23/08 | $ 0,505 |
| 6/24/08-10/6/08 | $ 0,585 |
| 10/7/08-11/17/08 | $ 0,585 |
| 11/18/08-12/31/08 | $ 0,585 |
| 1/1/09-5/25/09 | $ 0,550 |
| 5/26/09-12/7/09 | $ 0,550 |

**[*24]**

Using the estimate of Claimant's vehicle-related expenses based on the IRS standard business mileage rate of $ 0,445 and Respondents' reimbursement formula based on the $ 0,292 cents per mile, Respondents under-reimbursed Claimant in the amount of $ 0,943 per delivery ($ 0,445 minus $ 0,292 equals $ 0,153 per mile x 2.5 miles per delivery equals $ 0.3825 plus Claimant's additional 2.9 miles x $ 0,445 equals $ 1.29 ($ 0.3825 plus $ 1.29 equals $ 1,673 minus Respondents' reimbursement rate of $ 0.73 = $ 0,943). If the above calculated under-reimbursed sum is presented on a percentage basis, it amounts to a 56.36% underpayment ($ 0,943 divided into $ 1,673 equals 56.36%).

If the higher IRS standard business mileage reimbursement figure and the higher Respondents mileage reimbursement figure are also used, the amount of Respondents under-reimbursement of Claimant's travel-related expenses remains a large sum. Using the estimate of Claimant's vehicle-related expenses based on the IRS standard business mileage rate of $ 0,585 and Respondents' reimbursement formula based on the $ 0,412 cents per mile, Respondents under-reimbursed Claimant in the amount of $ 1,099 per delivery ($ 0,585 minus **[*25]** $ 0,412 equals $ 0,173 per mile x 2.5 miles per delivery equals $ 0.4325 plus Claimant's additional 2.9 miles x $ 0,585 equals $ 1.6965 ($ 0.4325 plus $ 1.6965 equals $ 2,129 minus Respondents' reimbursement rate of $ 1.03 = $ 1,099). If the above calculated under-reimbursed sum is presented on a percentage basis, it amounts to a 51.62% underpayment ($ 1,099 divided into $ 2,129 equals = 51.62%).

The above referenced amounts of under-reimbursement are a large enough gap to support Claimant's claim that Respondents failed to reasonably approximate his expenses. *See Wass (Wass I), No. 09-2254, 2010 U.S. Dist. LEXIS 141978, at *7 (D. Kan. Sept. 1, 2010)* (finding an under-reimbursement of $ 1.62 per hour significant enough to support the claim that the defendant failed to reasonably approximate the plaintiff's expenses).

**Arbitrator's Decision**:

I find that Respondents under-reimbursed Claimant for his travel-related costs which caused him to fall below the FMWA minimum wage. In addition, I find that Claimant is now entitled to be paid for his miles driven during the relevant period at the IRS standard business mileage rate.

Claimant contends that the IRS **[*26]** standard business mileage rate during the time period at issue in this case is a reasonable approximation of his vehicle-related expenses making pizza deliveries for Respondents. Respondents contends that Claimant cannot use the IRS standard business mileage rate as a substitute for his actual travel-related expenses that neither he nor Respondents maintained records of during the period at issue in this case. Respondents also contends that its vehicle reimbursement payments paid to Claimant under its formula and based on the Runzheimer computation is permissible as a safe harbor computation under the wage and hour regulations because it is a reasonable approximate of Claimant's vehicle-related expenses. Respondents cites no Court decision that is on point factually or legally with Claimant's allegations and claims in the instant case or that supports the positions that it has taken in this case.

Under the FMWA minimum wage, Respondents was required to reimburse Claimant in order to cover his vehicle-related expenses that he incurred making pizza deliveries so that his hourly wages were not below the FMWA minimum wage when those expenses are taken into account. *See, e.g.,* Perrin v. Papa John's Int'l, Inc., 818 F. Supp. 2d 1146 (E.D. Mo. 2011); **[*27]** Darrow v. WKRP LLC, No. 09-01613, 2011 WL 2174496 (D. Colo. June 3, 2011); Smith v. Pizza Hut, Inc., No. 09-01632, 2011 WL 2791331 (D. Colo. July 14, 2011); *Hanna v. CFL Pizza, LLC,* No. 05-2011-CA-52949 (Fla. Cir. Ct. Escambia Cnty. 2009).

In the absence of a Court decision holding that it is impermissible for Claimant to use the IRS standard business mileage rate as a substitute for his estimate of his actual travel-related expenses or in the place of Respondents' reimbursement rate that the Arbitrator finds did not reasonably approximate Claimant's travel-related expenses, the Arbitrator then defaults to the DOL FOH Section 30c15 which states that for minimum wage purposes, an employer may either reimburse employees who drive a personal vehicle for business use at the IRS rate or keep accurate, contemporaneous expense records and reimburse the employee accordingly.

In the instant case, Respondents used a third approach outside of the two alternatives set forth in the DOL's FOH Section 30c15 when it devised its universal formula for reimbursing its drivers for their travel-related expenses based on the Runzheimer computation. Under the holding **[*28]** in the *Wass* case, Respondents' delivery reimbursement rate had to reasonably approximate to the amount of Claimant's vehicle expenses. In the instant case, neither of the parties, like neither of the parties in the *Wass* case, has cited to any case that directly addresses the application of the "reasonable approximation" standard to reimbursement of vehicle-related expenses for Claimant's FMWA minimum wage claim.

When a minimum wage law requires an employer to reimburse an employee for using the employee's vehicle for the employer's benefit, the employer should reimburse the employee at the IRS standard business mileage rate or it should keep records of the employee's actual vehicle-related costs to support another reimbursement rate as is set forth in Section 30c15 of the DOL FOH. Respondents did neither of these two options pursuant to Section 30c15 of the DOL FOH in Claimant's case. Instead, Respondents computed a uniform formula based on the Runzheimer computation that could be used so long as the reimbursement rate figure reasonably approximated Claimant's vehicle-related costs. Claimant has proven in this case that Respondents under-reimbursed him significantly for his **[*29]** vehicle-related costs based on the average miles that he drove making deliveries and based on the reimbursement rate per delivery that he was paid by Respondents relative to the miles that he drove.

In its post hearing brief, Respondents challenged Claimant's reliance on Section 30c15 of the DOL FOH on grounds that Claimant merely attempted to point to the IRS optional rate for business expense deductions for tax purposes, and that he based his entire case on the contention that the IRS deduction rate is the only appropriate reimbursement rate. In addition, Respondents asserted in its brief that the purpose of the IRS deduction rate is to establish a ceiling on permissible tax deductions for business travel by car and that it is not a reimbursement rate or a floor below which any other reimbursement amount is unreasonable. Respondents also argues in its brief that the FMWA and the FLSA do not require employers to pay the IRS deduction rate, and even the IRS allows for alternative methods to determine the business mileage rate. *See, e.g.,* Shotgun Delivery, Inc., v. United States, 269 F.3d 969, 972 (9th Cir. 2001). As a result, Respondents argues that there simply is **[*30]** no basis for Claimant's contention that the IRS rate is a required reimbursement rate or the only appropriate reimbursement rate.

Contrary to Respondents' argument, Claimant argues in his brief that because Respondents failed to keep accurate records of Claimant's travel-related expenses, which it should have done under Section 30c15 of the DOL FOH, that Respondents was then required as matter of law to reimburse Claimant for his driving related expenses at the IRS standard business mileage rate. On this issue, Claimant contends that ends the inquiry as to the rate that Claimant is to be reimbursed for for his vehicle expenses.

The Arbitrator agrees with Claimant's position under Section 30c15 of the DOL FOH which the Arbitrator deems persuasive in this case especially in the absence of any other controlling or persuasive caselaw to the contrary which has not been provided by the parties in this case to the Arbitrator.

2015 AAA Employment LEXIS 221, *30

**Claimant's Damages**

In light of the Arbitrator's decision that Respondents is liable for a FMWA minimum wage violation as to Claimant, the next difficult task in this case is to compute the amount of Claimant's damages and any liquidated damages that he [*31] is owed by Respondents. Because so much time and effort was devoted during the arbitration hearing to the merits of Claimant's legal claim and to the basis for the Runzheimer computation and whether Respondents could even be liable for a FMWA minimum wage violation, there was little time and attention devoted by the parties to presenting evidence as to Claimant's damages in the event that he proved liability.

In Claimant's post hearing brief, Claimant has assisted the Arbitrator with various tables that show the computations of Claimant's damages which the Arbitrator has carefully reviewed and that he adopts for his findings as to Claimant's damages. The Arbitrator also notes that Respondents did not submit any damage models or computations in its post hearing brief. That is not unexpected because Respondents denied that it had any liability as to Claimant. By not supplying any damage models or computations, Respondents did not address the possibility that it could be liable to Claimant for any under-paid FMWA minimum wage sum.

**Respondents Is Entitled To An Offset Of $ 3,254.41**

The FMWA provides for legal or equitable relief as may be appropriate to remedy a minimum [*32] wage violation. *See* Fla. Const. Art. 10 § 24(e) and Fla. Stat. § 440.110 et seq. Respondents paid Claimant an initial hourly wage that averaged $ 0.86 above the minimum wage during the relevant time period. With Claimant's hourly wage average of only $ 0.86 above the State A minimum wage, if Claimant made only one delivery per hour that he was under-reimbursed for by the amount of $ 0.943 or any amount greater than $ 0.86 then he fell below the FMWA minimum wage. The table below compares Claimant's initial hourly wage to State A's minimum wage and it sets forth the offset that Respondents is entitled to for the amounts that it paid Claimant above the minimum wage.

| Date | Initial Hourly Wage | Minimum Wage | Difference |
|---|---|---|---|
| Nov. 1, 2006 - Dec. 31, 2006 | $ 7.35 | $ 6.40 | $ 0.95 |
| Jan. 1, 2007 - Sept. 3, 2007 | $ 7.35 | $ 6.67 | $ 0.68 |
| Sept. 4, 2007 - Dec. 31, 2007 | $ 7.65 | $ 6.67 | $ 0.98 |
| Jan. 1, 2008 - Sept. 1, 2008 | $ 7.65 | $ 6.79 | $ 0.86 |
| Sept. 2, 2008 -- Dec. 31, 2008 | $ 8.00 | $ 6.79 | $ 1.21 |
| Jan. 1, 2009 -- July 23, 2009 | $ 8.00 | $ 7.21 | $ 0.79 |
| July 24, 2009 -- Aug. 31, 2009 | $ 8.00 | $ 7.25 | $ 0.75 |
| Sept. 1, 2009 -- Dec. 7, 2009 | $ 8.10 | $ 7.25 | $ 0.85 |
| TOTAL AVERAGE | | | $ 0.86 |
| TOTAL HOURS | | 6,307 [6] | |
| % DRIVING HOURS | | 60% | |
| TOTAL HOURLY OFFSET | | | $ 3,254.41 |

[*33]

Ex. C -- 20.

Respondents is only entitled to an offset for the hours that Claimant spent driving, as those were the hours when he was under-reimbursed. Claimant testified that he is not certain because the events in question took place 5 years ago, but he recalls that he spent approximately 50% to 60% of his time working for Respondents on the road, and approximately 40% to 50% of his time in the store. Tr. at 253. Based on Claimant's testimony and for purposes

---

[6] This total was obtained by adding all of the hours from November 1, 2006 through December 7, 2009 in Claimant's payroll. Ex. C - 20.

2015 AAA Employment LEXIS 221, *33

of the offset calculation, the Arbitrator  has decided that Claimant spent  60% of his time on the road. Claimant worked a total of 6,307 hours for Respondents. 60% of those hours amounts to 3,784.2 hours. Multiplying the approximate  number of hours on the road, 3,784.2, by the hourly offset, $ 0.86, yields a total of $ 3,254.41. This is the amount of the offset to which Respondents is entitled.

**Claimant Is Entitled To $ 19,931.40 In Damages**

According to Respondents' own records, Claimant made approximately 9,749 deliveries  during the relevant time period.  Ex. J -- 5. Recognizing that the average delivery  was at least 5.4 miles  and that the Arbitrator  finds that Claimant should now be reimbursed  at the IRS standard **[*34]** business mileage  rate for each delivery,  Claimant should have been reimbursed  as follows.

| DATE | IRS RATE | PROJECTED MILEAGE | IRS REIMBURSEMENT |
|---|---|---|---|
| 11/1/06 - 12/11/06 | $ 0.445 | 1,925.3973 | $ 856.80 |
| 12/12/06 - 12/31/06 | $ 0.445 | 939.2182 | $ 417.95 |
| 1/1/07 - 3/19/07 | $ 0.485 | 3,663.951 | $ 1,776.53 |
| 3/20/07 - 4/30/07 | $ 0.485 | 1,972.3582 | $ 956.59 |
| 5/1/07 - 12/31/07 | $ 0.485 | 11,505.423 | $ 5,580.13 |
| 1/1/08 - 3/19/08 | $ 0.505 | 3,710.9119 | $ 1,873.51 |
| 3/20/08 - 6/2/08 | $ 0.505 | 3,522.0683 | $ 1,778.64 |
| 6/3/08 - 6/23/08 | $ 0.505 | 986.17911 | $ 498.02 |
| 6/24/08 - 10/6/08 | $ 0.585 | 4,884.9346 | $ 2,857.10 |
| 10/7/08 - 11/17/08 | $ 0.585 | 1,972.3582 | $ 1,153.83 |
| 11/18/08 - 12/31/08 | $ 0.585 | 2,066.28 | $ 1,208.77 |
| 1/1/09 - 5/25/09 | $ 0.550 | 6,809.332 | $ 3,745.13 |
| 5/26/09 - 12/7/09 | $ 0.550 | 9,204.3384 | $ 5,062.39 |
| TOTAL | | 53,159.75 | $ 27,765.40 |
| % WORKED | | | 69.457% |
| ADJUSTED TOTAL | | | $ 19,285.02 |

Because Respondents reimbursed  Claimant pursuant to a formula  based on the Runzheimer computation  that under-reimbursed  his travel-related  expenses, Claimant was actually reimbursed  a total of approximately $ 5,793.71. The table below sets forth this computation.

| DATE | RESPONDENTS RATE PER DELIVERY | PROJECTED DELIVERIES | REIMBURSEMENT AMOUNT |
|---|---|---|---|
| 11/1/06 - 12/11/06 | $ 0.78 | 353.10758 | $ 275.42 |
| 12/12/06 - 12/31/06 | $ 0.73 | 172.2476 | $ 125.74 |
| 1/1/07 - 3/19/07 | $ 0.73 | 671.76564 | $ 490.39 |
| 3/20/07 - 4/30/07 | $ 0.78 | 361.71996 | $ 282.14 |
| 5/1/07 - 12/31/07 | $ 0.83 | 2,110.0331 | $ 1,751.33 |
| 1/1/08 - 3/19/08 | $ 0.83 | 680.37802 | $ 564.71 |

MARK POTASHNICK

2015 AAA Employment LEXIS 221, *34

| DATE | RESPONDENTS RATE PER DELIVERY | PROJECTED DELIVERIES | REIMBURSEMENT AMOUNT |
|---|---|---|---|
| 3/20/08 - 6/2/08 | $ 0.93 | 645.9285 | $ 600.71 |
| 6/3/08 - 6/23/08 | $ 0.98 | 180.85998 | $ 177.24 |
| 6/24/08 - 10/6/08 | $ 1.03 | 895.68752 | $ 922.56 |
| 10/7/08 - 11/17/08 | $ 0.98 | 361.71996 | $ 354.49 |
| 11/18/08 - 12/31/08 | $ 0.88 | 378.94472 | $ 333.47 |
| 1/1/09 - 5/25/09 | $ 0.81 | 1,248.7951 | $ 1,011.52 |
| 5/26/09 - 12/7/09 | $ 0.86 | 1,688.0265 | $ 1,451.70 |
| TOTAL | | | $ 8,341.43 |
| % WORKED | | | 69.457% |
| ADJUSTED TOTAL | | | $ 5,793.71 |

[*35]

$ 19,285.02, the amount that Claimant should have been reimbursed,  minus $ 5,793.71, the amount he was reimbursed,  equals $ 13,491.31. Respondents' offset of $ 3,525.61, is subtracted from that number, for an initial total damages amount of $ 9,965.70.

Below is a chart that combines the above referenced  computations.

| DATE | RESPONDENTS RATE PER DELIVERY | PROJECTED DELIVERIES | REIMBURSEMENT AMOUNT | IRS REIMBURSEMENT |
|---|---|---|---|---|
| 11/1/06 - 12/11/06 | $ 0.78 | 353.10758 | $ 275.42 | $ 856.80 |
| 12/12/06 - 12/31/06 | $ 0.73 | 172.2476 | $ 125.74 | $ 417.95 |
| 1/1/07 - 3/19/07 | $ 0.73 | 671.76564 | $ 490.39 | $ 1,776.53 |
| 3/20/07 - 4/30/07 | $ 0.78 | 361.71996 | $ 282.14 | $ 956.59 |
| 5/1/07 - 12/31/07 | $ 0.83 | 2110.0331 | $ 1,751.33 | $ 5,580.13 |
| 1/1/08 - 3/19/08 | $ 0.83 | 680.37802 | $ 564.71 | $ 1,873.51 |
| 3/20/08 - 6/2/08 | $ 0.93 | 645.9285 | $ 600.71 | $ 1,778.64 |
| 6/3/08 - 6/23/08 | $ 0.98 | 180.85998 | $ 177.24 | $ 498.02 |
| 6/24/08 - 10/6/08 | $ 1.03 | 895.68752 | $ 922.56 | $ 2,857.10 |
| 10/7/08 - 11/17/08 | $ 0.98 | 361.71996 | $ 354.49 | $ 1,153.83 |
| 11/18/08 - 12/31/08 | $ 0.88 | 378.94472 | $ 333.47 | $ 1,208.77 |
| 1/1/09 - 5/25/09 | $ 0.81 | 1248.7951 | $ 1,011.52 | $ 3,745.13 |
| 5/26/09 - 12/7/09 | $ 0.86 | 1688.0265 | $ 1,451.70 | $ 5,062.39 |
| TOTAL | | | 8,341.43 | $ 27,765.40 |
| % WORKED | | | $ 5,793.71 | $ 19,285.02 |

MARK POTASHNICK

2015 AAA Employment LEXIS 221, *35

| DATE | RESPONDENTS RATE PER DELIVERY | PROJECTED DELIVERIES | REIMBURSEMENT AMOUNT | IRS REIMBURSEMENT |
|------|------|------|------|------|
| (69.457%) | | | | |
| HOURLY OFFSET | | | | $ 3,525.61 |
| ADJUSTED | | | | $ 9,965.70 |
| TOTAL | | | | |

**[*36]**

Applying the FMWA's liquidated damages provision, Claimant is entitled to $ 19,931.40 in damages.

## Attorneys' Fees and Costs

As the Arbitrator  decided previously and as stated in the interim Award, in light of Claimant being the prevailing Claimant in this arbitration  proceeding, Claimant's attorneys are entitled to be awarded their reasonable attorneys' fees and Claimant may recover his taxable costs in this case.

Claimant's claims in this case were hotly disputed by Respondents during the final hearing and in the parties' post hearing briefs. It is the Arbitrator's  belief that the litigation of this case before the final hearing was also vigorous and contentious. Similarly, Claimant's Motion for reasonable fees and costs is hotly disputed and opposed by Respondents on multiple grounds including as follows: 1) that Claimant's counsel, Jeremiah Frei-Pearson, cannot recover any fees under State A law because he was not properly admitted in State A and that he engaged in the unlicensed practice of law in State A in this case; 2) that Claimant's counsels requested hourly  rates are unreasonable; 3) that even if the litigation of this case was vigorous,  Claimant's counsels **[*37]** hours are not justified; 4) that the fees incurred by Kelly Casey are significantly overstated; and, 5) that Claimant's request for costs is deficient because it lacks adequate documentation and it seeks to be reimbursed  for costs that are not properly taxable.

Claimant seeks $ 157,125.00 in attorneys' fees and $ 29,701.33 in costs which totals $ 186,826.33 as Claimant's counsels' reasonable attorneys' fees and costs to date.

The above referenced  attorneys' fee figure of $ 157,125.00 is based on a blended hourly rate  of $ 300.89 for six (6) time-keepers who have billed a total of 522.20 hours on this case to date. The hours billed on this matter and the hourly  rates of the respective time-keepers are as follows: 1) Jeremiah Frei-Pearson - 224.80 hours at an hourly rate  of $ 425.00 = $ 95,540.00; 2) C. Ryan Morgan - 22.15 hours at an hourly rate  of $ 425.00 = $ 9,413.75; 3) Khristoph A. Becker - 176.80 hours at an hourly rate  of $ 200.00 - $ 35,360.00; 4) Nadia E. Niazi - 9.20 hours at an hourly rate  of $ 200.00 = $ 1,840.00; 5) Kelly D. Casey - 80 hours at an hourly rate  of $ 175.00 = $ 14,000.00; and, 6) Claudia Silva - 9.25 hours at an hourly rate  of $ 105.00 = $ 971.25. The hourly  **[*38]** amount for Mr. Frei-Pearson reflects his billing  judgment reduction of $ 275.00 from his current hourly rate  of $ 700.00. The hourly rates for Mr. Becker and Ms. Niazi reflect a billing  judgment reduction by Mr. Frei-Pearson of $ 125.00 from their current hourly  rates of $ 325.00.

The above referenced  cost figure of $ 29,701.33 is based the following costs: 1) an expert's fee of $ 15,268.74 for Paul Lauria of Mercury & Associates for his testimony at the hearing, his review of the record, his consultation and his expenses; 2) analysis cost of $ 9,158.48 [7] for the services of Northstar Litigation Technologies, LLC to analyze

---

[7]  Respondents correctly noted in their Response that in Mr. Frei-Pearson's Affidavit at f 21 o. he stated that on September 16, 2014 Northstar Litigation was paid $ 15,968.75, as opposed to the figure of $ 18,316.95 that is set forth in Claimant's Motion, for

2015 AAA Employment LEXIS 221, *38

the distances driven by Claimant; and, 3) additional litigation related expenses of $ 5,274.11 for deposition transcripts, printing fees, Concordance fees, binding fees, travel costs, Pacer fees, Westlaw charges and filing fees.

Respondents contend that Claimant should be awarded no greater than $ 11,160.05 as his reasonable attorneys' fees and costs of this matter. That figure is broken down as follows: 1) total Morgan & Morgan attorney fees of $ 7,684.38; 2) total Kelly Casey fees of $ 2,257.50; and, 3) total allowable costs of $ 1,218.18.

In the alternative, **[*39]** Respondents submit another total attorneys' fees and costs figure of $ 50,668.80 which includes an attorneys' fees amount of $ 39,528.75, for attorneys' fees for Mr. Frei-Pearson and for Mr. Becker and Ms. Niazi, the two other attorneys in Mr. Frei-Pearson's law firm that also worked on this case. Respondents request that the hourly  rates for the Claimant's attorneys be reduced to no more than $ 275.00 for Mr. Frei-Pearson, $ 325.00 for Mr. Morgan, and $ 175.00 for Mr. Becker and Ms. Niazi.

The above referenced  total allowable cost figure of $ 1,218.18 [8] is based on Respondents' contention that Claimant's recoverable costs are $ 2,356.35 in total for both the Claimant and Person A cases which are for: 1) filing fees totaling  $ 400.00; 2) deposition transcripts totaling  $ 779.10; and, 3) hearing transcripts totaling  $ 1,177.25.

The disparity of the above referenced  attorneys' fees and cost figures illustrates again how hotly disputed and contested the claims for attorneys' fees and costs are in this case. Legal Analysis of Claimant's Claims for Reasonable Attorney Fees

The federal lodestar approach is the foundation for setting reasonable fee awards pursuant to the *FLSA. McMillan v. Masrtech Grp. Inc., No 13-35, 2014 WL 4297905*, **[*40]** at *6 (M.D. Fla. Aug. 28, 2014). The Florida Constitution states that "… [it] is intended that case law, administrative interpretations and other guiding standards developed under the federal FLSA shall guide the construction of" the FMWA. Accordingly, the Arbitrator  will be guided by 8 FLSA cases and he will use the federal lodestar approach for deciding the reasonable fee award in this FMWA case.

The lodestar approach was explained by the Eleventh Circuit as follows:

[A] prevailing plaintiff in a FLSA case is entitled to a reasonable award of attorneys' fees and costs. *29 U.S.C. § 216(b)*; *Sahyers v. Prugh, Holliday & Karatinos, P.L., 560 F.3d 1241, 1244 (11th Cir. 2009)*. Calculation of attorneys' fees involves multiplying the number of hours reasonably expended in litigating the claim and the customary fee charged for similar services in the relevant community ("lodestar amount"). *See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1993, 76 L.Ed.2d 40 (1983)*. A properly calculated lodestar amount "is itself strongly presumed to be reasonable." *Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1150 (11th Cir. 1993)* **[*41]** (per curiam) ("Consequently, the courts have severely limited the instances in which a lawfully found lodestar amount may be adjusted to a higher or lower level.").

*Galdames v. N & D. Inv. Corp., 432 F. App'x 801, 806 (11th Cir. 2011)*.

Prevailing FMWA plaintiffs are limited to those fees that are reasonable. *Machado v. Da Vittorio, LLC*, No. 09-23069- *CIV, 2010 WL 2949618 at *2 (S.D. Fla. July 26, 2010)*. An Arbitrator  or court has "broad discretion to determine what fees are reasonable under the circumstances." *Id.* Once the appropriate hourly rate  is determined, an Arbitrator  or the court must then determine the *reasonable* number of hours expended in the litigation, and is obligated to exclude hours that are "excessive,  redundant or otherwise unnecessary." *Goss v. Killian Oaks House of Learning, 248 F.Supp.2d 1162, 1168 (S.D. Fla. 2003)*. An Arbitrator  or the court "may consider the amount of damages recovered in awarding attorney's fees." *Tyler v. Westway Automotive Service*, Ctr. Inc. No. 02-61667- *CIV, 2005 WL 6148128 at *5 (S.D. Fla. Mar. 10, 2005)*. Where the number of hours claimed is unreasonably high,

---

reviewing mileage  data and creating exhibits. One-half of that amount that is apportioned to both the Claimant and Person A arbitration  cases totals $ 7,984.38.

[8]  It is unknown how Respondent arrived at this specific figure as one-half of $ 2,356.35 is $ 1,178.18.

**[\*42]**  a decision maker has two choices: "it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins v. Wrap it _Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008)_.

## Mr. Frei-Pearson and Whether he Engaged in the Unauthorized Practice of Law

As a threshold issue, the Arbitrator  finds that Mr. Frei-Pearson is entitled to an award of attorney's fees in this case and that he did not engage in the unauthorized practice of law in State A when he appeared and participated in the arbitration  hearing in this case.

The Arbitrator  is surprised and concerned that this issue was raised again by Respondents in light of the discussion on this same issue and on the record at the outset of the final hearing. Respondents even filed a copy of pages 11 and 12 on hearing transcript on that discussion as Exhibit 1 with its Response. The discussion was as follows:

"...Person B: I'm going to present the stenographer, as our exhibits, two Verified Statements Pursuant to Rule 1-3.11 of the State A Rules, along with our cover letter showing that we paid the fee, and the Verified Statements for these cases for both Person C and myself.  **[\*43]**  Do you want to do the same?

(Respondents Exhibit 1 was identified.)

MR. FREI-PEARSON: I would, but I didn't bring them.

Person B: Yeah, but you can't start without them.

MR. FREI-PEARSON: I don't think there's a rule that requires me to - I'll represent on the record, that we've complied with the State A rules and certainly are allowed to appear in this matter.

Person C: **Okay, It's fine with me..."** (Emphasis added by Arbitrator) .

The evidentiary record in this case, except for post hearing briefs and briefs on attorneys' fees and costs, officially closed on August 28, 2014, when the two-day evidentiary hearing concluded. Notwithstanding the close of the evidentiary record, Respondents filed an Affidavit of Attorney Deborah L. Moskowitz with their Response in opposition to the Claimant's Motion which Respondents did not have permission from the Arbitrator  to file. In light of the evidentiary record in this case being closed, it was improper for Respondents to file the Affidavit as new evidence in this case for the Arbitrator's  review and consideration.

In the Affidavit, Ms. Moskowitz stated that on May 6, 2015, which was nearly nine (() months after the hearing was **[\*44]**  completed, that she contacted the Unlicensed Practice of Law Department of the State A Bar and was advised that Mr. Frei-Pearson had only submitted a verified statement and paid the requisite filing fee in connection with the Person A matter, and that there was nothing on file in connection with this matter. The Affidavit does not identify the individual from the State A Bar that Ms. Moskowitz spoke with.

The Respondents' filing of Ms. Moskowitz's Affidavit resulted in the Claimant filing an Affidavit of Claudia Silva, a paralegal with the law firm of Morgan & Morgan who works with C. Ryan Morgan. In Ms. Silva's Affidavit she stated that she previously transmitted Mr. Frei-Pearson's Verified Statement for Leave to Appear pursuant to State A Bar Rule 1-3.11 for this matter and for the related arbitration  between Person A and Respondents to the State A Bar along with the filing fee check. Ms. Silva also stated in her Affidavit that on May 26, 2015, she called the Unlicensed Practice of Law Department of The State A Bar and that she spoke with a person named Jackie and she (Jackie) verified to Ms. Silva that the Bar had received the Verified Statement of Law for Mr. Frei-Pearson in connection **[\*45]**  with this matter prior to the arbitration  hearing. In the Affidavit, Ms. Silva also stated that Jackie also verified that the State A Bar had received the filing fee for Mr. Frei-Pearson's appearance in this matter.

For all the foregoing reasons, the Arbitrator  finds that Mr. Frei-Pearson did not engage in the unauthorized practice of law in State A when he appeared and participated in the arbitration  hearing in this case. In light of this decision, the Arbitrator  also finds that Mr. Frei-Pearson is entitled to an award of attorney's fees for his work on this case.

2015 AAA Employment LEXIS 221, *45

The Arbitrator also rejects Respondent's argument in its Response that if he awards fees to Mr. Frei-Pearson that he is doing that notwithstanding Mr. Frei-Pearson's unauthorized practice of law in State A in this case.

### Claimant's Counsels' Hourly Rates

As previously noted above, Mr. Frei-Pearson and Mr. Morgan are each seeking to be compensated at hourly billing rates of $ 425.00 due to having been repeatedly recognized as excellent attorneys who are entitled to be compensated at their typical billing rates. Claimant's Motion states that Mr. Morgan's typical hourly billing rate is $ 425.00. Claimant's Motion **[*46]** also states that Mr. Morgan is co-chair of Morgan & Morgan's Employee Rights Group and that the firm is a nationwide trial advocacy firm employing over 240 attorneys in six states. In addition, the Motion states that Mr. Morgan is licensed to practice law in State A and State C, as well as numerous district courts around the nation and that he has extensive experience litigating wage and hour actions and that he has been involved as class counsel in several collective and class action cases that are identified in the Motion. However, the Motion does not state how long Mr. Morgan has been a practicing attorney and it does not cite any cases in Central State A in which a Court approved and awarded Mr. Morgan's billing rate of $ 425.00 per hour.

Claimant's Motion and Mr. Frei-Pearson's Affidavit states that Mr. Frei-Pearson's typical billing rate is $ 700.00 for which he has exercised his billing judgment and reduced his hourly rate by $ 275.00 in this case. In Mr. Frei-Pearson's Affidavit he states that he graduated from Stanford Law School in 2003 where he was a Public Interest Fellow and that for his first three years as a lawyer, that he worked at Kaye Scholer LLP, an international **[*47]** law firm. In addition, the Affidavit states that since 2006, Mr. Frei-Pearson has represented Plaintiffs (primarily foster children, underpaid employees and consumers) in complex cases (primarily class actions) in jurisdictions throughout the country, including State D and State A, and that he has received several accolades for his work. In the Motion and the Reply, Mr. Frei-Pearson states that his hourly rate of $ 650.00 has been approved by six (6) courts in three different states and he cites the cases in which the Courts approved this hourly rate. However, the Motion does not cite any cases in Central State A in which a Court approved and awarded Mr. Frei-Pearson's billing rate of $ 650.00 or $ 700.00 or his lowered hourly rate of $ 425.00 that he is seeking in this matter.

In Claimant's Motion, there are citations to seven (7) cases in State A, six (6) of which are from Courts in the Southern District of State A, in which an hourly rate of $ 450.00 was approved in FLSA cases for lawyers with more than ten years of experience. While the $ 450.00 hourly rate may be awarded in certain FLSA cases in South State A, the Arbitrator must apply the appropriate hourly rate for Central **[*48]** State A. The Arbitrator may also consider his own knowledge and experience concerning reasonable and proper fees. *Norman v. Housing Authority of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988).*

Respondent contends in its Response that the hourly rates of $ 425.00 for Mr. Frei-Pearson and Mr. Morgan and the hourly rates of $ 200.00 for the two associates in Mr. Frei-Pearson's law firm that worked on this case greatly exceed the reasonable rates permissible for a FMWA and/or FLSA claim in the Middle District of State A. Respondent cites in its Response four (4) FLSA cases from the Middle District of State A decided during the period from 2009 - 2015 in which the hourly rate awarded in those cases ranged from a low of $ 150.00 per hour to a high of $ 325.00 per hour. Respondent also acknowledges in its Response that it does not dispute Mr. Frei-Pearson's credentials and that he is a well-qualified attorney.

In this case, after reviewing and observing the attorney's legal work, including extensive briefing, presentation of evidence and witnesses, and oral argument, and being fully aware of the hourly rates for such work in Central State A, the Arbitrator is able to **[*49]** assess the reasonable hourly rate for lawyers in Central State A with similar skills and abilities as the Claimant's attorneys in this case. In addition, the Arbitrator finds that Mr. Frei-Pearson and Mr. Morgan appear to be on the same caliber and experience in terms of practicing attorneys and therefore that their hourly rates should be awarded in this case at the same hourly rate for each attorney.

The Arbitrator finds that the reasonable rate for Mr. Frei-Pearson and Mr. Morgan in this case is $ 325.00 per hour and that the reasonable rate for Mr. Becker and Ms. Niazi is $ 200.00 per hour. These rates are based on the case law cited to the Arbitrator by Respondent for reasonable rates in the Middle District of State A for FLSA cases. *See Weldon v. Backwoods Steakhouse, Inc.*, No 6:14-cv-79- Orl-37TBS, *2014 WL 4385593 at *5 (M.D. Fla. Sept. 4,*

*2014)* (noting that the $ 325.00 pushes the upper boundary of reasonableness for rates charged by plaintiffs' counsel in FLSA cases in this district).

## Claimant's Counsels' Hours on this Case

In addition to opposing Claimant's Counsels' hourly rates as being unreasonable, Respondents also contend that Claimants' **[*50]** Counsels' hours [9] spent on the litigation of this case are not justified even if the litigation was vigorous. Respondents state in their Response that Respondents had a right to defend itself in this matter, and that vigorous litigation cannot justify the FBFG attorneys' hours on the litigation of this case.

The parties' Briefs attempt to apprise the Arbitrator of how vigorous, contentious and/or aggressive the other side's discovery and litigation tactics were during the litigation of this case. Respondents point the finger at the Claimant's attorneys for their alleged aggressive litigation tactics that made the litigation of this case vigorous. Similarly, Claimant likewise contends that Respondents' attorneys engaged in unnecessary discovery and litigation related activity that contributed to the FBFG attorneys' hours in this case. Other than the parties' Briefs and other than the Arbitrator's dealings with the parties' attorneys before the final hearing and his observations of the parties' open issues and the attorneys dealings with each other at the final hearing, the Arbitrator cannot decide which party's attorneys, or whether both parties' attorneys, may have caused or contributed **[*51]** to the vigorous and/or contentious litigation of this case. However, the Arbitrator concludes that vigorous, contentious and/or aggressive litigation tactics in this case are likely to have contributed to the hours that the FBFG attorneys (and likely Respondents' counsel) spent on the litigation of this case.

The Arbitrator also notes that Respondents did not produce information in their Response about the hours that their legal team spent on the discovery and the litigation of this case. The Arbitrator acknowledges and understands that Respondents are not required to produce that information in order to oppose the FBFG attorneys' hours as not justified and unreasonable. Nonetheless, without competing information from Respondents on the hours that their legal team spent on the discovery and the litigation of this case, it is difficult for the Arbitrator to decide and to deem the FBFG attorneys' hours totaling 410.80 as not justified or unreasonable.

In Respondents' Response it cites two cases; *Brandt v. Magnificent Quality Florals Corp.*, No 07-20129- CIV, 2011 WL 4625379 at *9 (S.D. Fla. Sept. 30, 2011); and, *Tyler v. Westway Automotive Service Or., Inc.*, No. **[*52]** 02-61667- *CIV, 2005 WL 6148128 at *5 (S.D. Fla. Mar. 10, 2005)*, for the proposition that those cases also involved extremely contentious and vigorous litigation and that the hours sought and awarded to the prevailing Plaintiffs attorneys in those cases were less than the hours that the FBFG attorneys are seeking in this case. The Arbitrator has reviewed the above referenced cases and he has noted that there are factual and legal issues unique to those cases and that distinguish those cases from this case. Therefore, the Arbitrator is reluctant to conclude that the FBFG attorneys' hours in this case should be reduced so that they are in line with the hours that the Courts awarded in the *Brandt* and *Westway* cases.

In Respondents' Response it makes several arguments as to why the FBFG attorneys' hours should be reduced based on an hour-by-hour analysis on the following grounds: 1) the nature of the discovery in this matter does not justify the fees sought (total of 27.70 hours in this case [10] per Respondents' Charts 1 and 2 attached to its Response) related to the discovery disputes; 2) the Claimant spent an inordinate amount of time (total of 23.70 hours in this **[*53]** case per Respondents' Chart 3 attached to its Response) simply drafting its discovery

---

[9] Respondents are only contesting the hours of attorneys Frei-Pearson, Becker and Niazi as being unreasonable. Those attorneys' hours will hereinafter be collectively referred to as the FBFG attorneys' hours. Respondents accept the hours claimed by attorney Morgan.

[10] The Arbitrator accepts the above referenced charts as compiled and submitted with Respondents' Response in opposition to Claimant's Motion. However, the Arbitrator also notes that the charts provide a breakdown of the alleged excessive hours for the Claimant and Person A cases separately and then the hours are totaled in some of the above referenced categories of alleged excessive hours even though the two cases were litigated and decided separately. Therefore the Arbitrator has identified and computed just the time entries on the charts for the alleged excessive hours pertaining to just this case and those are the hours set forth above in the parentheses for each of the categories of alleged excessive hours in this case only.

responses; 3) Claimant incurred an excessive amount of time (total of 23.0 hours in this case per Respondents' Chart 4 attached to its Response) preparing for depositions; 4) Claimant spent an excessive amount of time (total of 98.90 hours in this case per Respondents' Chart 5 attached to its Response) preparing for the hearing; 5) Claimant incurred an excessive amount of time (total of 91.30 hours in this case per Respondents' Chart 7 attached to its Response) drafting the post-hearing brief; 6) Claimant incurred an excessive amount of time (total of 2.4 hours in this case per Respondents' Chart 8 attached to its Response) drafting a brief pertaining to the confidentiality of the Award; 7) Claimant is not entitled to fees (total of 13.60 hours in this case per Respondents' Chart 9 attached to its Response) in litigating the amount of recoverable fees; 8) Claimant is not entitled to fees (total of 25.70 hours in this case per Respondents' Chart 10 attached to its Response) for travel time; 9) Claimant seeks compensation for duplicative work (total of 33 hours in this case per Respondents' Chart 11 [*54] attached to its Response) at the hearing; and, 10) other tasks performed by Mr. Becker (total of approximately 79.10 hours in this case per Respondents' Chart 12 attached to its Response) appear to be either duplicative or excessive.

The above referenced hours that Respondents contend are excessive or otherwise unnecessary by the FBFG attorneys totals 418.40 hours in this case. The Arbitrator computes that Claimant is seeking a total of 410.80 hours for the FBFG attorneys based on the chart summarizing the attorneys' hours on page 19 of Claimant's Motion.

In the Fee Adjustment Summary of their Response, Respondents reduced the reasonable attorneys' fee sum that should be awarded to the FBFG attorneys from the total sum of $ 137,740.00 to the total sum of $ 39,528.75. It is unclear to the Arbitrator how Respondents arrived at the amount of $ 39,528.75 as the formula for that figure is not set forth in the table on page 22 of the Response or elsewhere in the Response. In addition, the total reasonable hours that Respondents accept that the FBFG attorneys may have reasonably worked on this case is also not provided in their Response.

In this case, Respondents do not request or argue [*55] for an across-the-board percentage cut of the FBFG attorneys' hours based on the amount of the fees sought relative to the amount that Claimant was awarded on his claim in this case. Therefore, the Arbitrator is left with deciding the reasonableness of the hours worked in this case by the FBFG attorneys on an hour-by-hour analysis for which Claimant is seeking a total of 410.80 hours.

For all of the foregoing reasons, the Arbitrator finds that the total of 410.80 hours worked in this case by the FBFG attorneys to be justified and reasonable. Accordingly, the FBFG attorneys' hours, and Mr. Morgan's hours, which are uncontested by Respondent in this case, will not be reduced by the Arbitrator based on either an hour-for-hour analysis or based on an across-the-board percentage cut.

### Kelly Casey's Hours

Kelly Casey ("Ms. Casey") performs trial technology and support for Total Trial Solutions and Claimant seeks a total of $ 14,000 for eighty (80) hours of Ms. Casey's work on this case at $ 175.00 per hour. Respondents contend that Claimant should have found a local witness in City A to perform the ministerial work of data entry and manipulation of data that Ms. Casey performed [*56] in this case. In addition, Respondents contend that the fees incurred for Ms. Casey's services are significantly overstated due to alleged double-billing by Ms. Casey for over 50 hours of the exact same work in the Claimant and Person A arbitration cases, that Ms. Casey inappropriately billed for her travel time, and that Ms. Casey performed clerical and secretarial work that is not compensable.

Claimant submitted a Declaration of Ms. Casey with its Reply. In the Declaration, Ms. Casey stated and explained that her work on the Claimant and Person A cases was intertwined and that her work often involved the exact same processes of data review and manipulation on both cases. In the Declaration, Ms. Casey also stated that she recorded her time as being for both Claimant and Person A which was then billed as one-half to each case. Respondents' Response states that an additional 73.7 hours are claimed for Ms. Casey in the Person A arbitration.

Ms. Casey testified at the hearing about her data entry and data manipulation that resulted in her creating documents summarizing Respondent's data that were presented into evidence at the hearing. As Claimant accurately points out in its Reply, [*57] at the hearing Respondent's counsel opposed Ms. Casey's testimony on grounds that Claimant failed to disclose her as their expert and it moved to strike Ms. Casey's testimony on grounds

that she offered expert testimony. In its Response, Respondent now contends that Ms. Casey merely performed ministerial clerical and secretarial work for Claimant that is not compensable.

Having observed and heard Ms. Casey's testimony at the hearing, the Arbitrator finds that Ms. Casey performed high level trial technology and litigation support services for the Claimant in this case and that she performed more than ministerial clerical and secretarial work for Claimant as Respondent is now contending. The Arbitrator also finds that Ms. Casey's hourly fee of $ 175.00 for her services and her 80 hours billed for her services in this case to be reasonable and compensable.

## Claimant's Costs

The costs recoverable by prevailing plaintiffs in FLSA cases under section 216(b) are limited to those costs enumerated in _28 U.S.C. § 1920_. See _Glenn v. Gen. Motors Corp., 841 F.2d 1567, 1575 (11th Cir.1988)_. _Title 28, United States Code, Section 1920_ **[*58]** provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

_28 U.S.C. § 1920_. "[A] court may only tax costs as authorized by statute." _U.S. EEOC v. W & O, Inc., 213 F.3d 600, 620 (11th Cir.2000)_ (citing _Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987))._

Claimant argues in its Reply that it should not be limited to recover only the small number of taxable costs explicitly listed under _28 U.S.C. § 1920_ and that prevailing parties in **[*59]** FLSA and other wage and hour cases are not limited by Section 1920 and that they are entitled to all reasonable costs incurred during the litigation. However, some of the FLSA cases that Claimant cites in its Reply in support of the above referenced argument cited Section 1920 and limited the prevailing Plaintiffs cost award under that statute. See _Weller v. Finger, No. 08-0240, 2010 WL 2465522 at *7 (S.D. Ala. June 15, 2010)_ ("In the exercise of sound discretion, trial courts are accorded great latitude in ascertaining taxable costs." _Loughan v. Firestone Tire & Rubber Co., 749 F.2d 1519, 1526 (11th Cir.1985)_ (citing _United States v. Kolesar, 313 F.2d 835 (5th Cir.1963))_. However, in exercising its discretion to tax costs, absent explicit statutory authorization, federal courts are limited to those costs specifically enumerated in _28 U.S.C. § 1920_. _Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987)_. The word "costs" is not synonymous with "expense." _Eagle Insurance Co. v. Johnson, 982 F.Supp 1456, 1458 (M.D.Ala.1997)_. "[E]xpense includes all the expenditures **[*60]** actually made by a litigant in connection with the lawsuit." _Id._ (citations omitted). "Whereas the costs that the district court may award under Rule 54(d)(1) are listed in _28 U.S.C.A. § 1920_, and a district court may not award other costs or exceed the amounts provided in § 1920 without explicit authorization in another statutory provision." _Id._ (citations omitted). Thus, the costs will almost always be less than the total expenses associated with the litigation. _Id._ (citations omitted). See _Calderon v. Witvoet, 112 F.3d 275 (7th Cir. 1997)_ (First, the district court awarded, as costs, outlays for travel and related expenses by attorneys and paralegals. These expenses are not listed in _28 U.S.C. § 1920_ and therefore may not be reimbursed as costs. _Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987)_; _Collins v. Gorman, 96 F.3d 1057 (7th Cir.1996)_.

The Arbitrator also rejects Claimant's arguments that the FMWA commands that counsel for prevailing parties "<u>shall</u> be awarded reasonable fees and costs", which is more than just "taxable" **[*61]** fees and costs and that the

2015 AAA Employment LEXIS 221, *61

AAA Employment Procedure Rules at 9, empower the presiding arbitrator to award all fees and costs authorized by law without limitation.

## Uncontested Costs

Respondents do not dispute that Claimant is entitled to an award of costs in the amount of $ 1,218.18, based on one-half of the Claimant's recoverable costs of $ 2,356.35 in total for both the Claimant and Person A cases which are for: 1) filing fees totaling $ 400.00; 2) deposition transcripts totaling $ 779.10; and, 3) hearing transcripts totaling $ 1,177.25. The Arbitrator agrees that these costs encompass expenses that were necessary for use in this case and are statutorily authorized under *28 U.S.C. § 1920*.

## Contested Costs

Respondents object to all of the other costs that Claimant seeks to be awarded in this case which include: 1) an expert's fee of $ 15,268.74 for Paul Lauria of Mercury & Associates for his testimony at the hearing, his review of the record, his consultation and his expenses; 2) analysis cost of $ 9,158.48 for the services of Northstar Litigation Technologies, LLC to analyze the distances driven by Claimant; and, 3) additional litigation **[*62]** related expenses of $ 5,274.11 for deposition transcripts, printing fees, Concordance fees, binding fees, travel costs, Pacer fees, Westlaw charges and filing fees. The Arbitrator agrees with Respondents that the above referenced costs encompass expenses that are not statutorily authorized under *28 U.S.C. § 1920*.

## AWARD

I hereby render this final Award as follows:

1. Under the FMWA minimum wage, Respondents must now pay Claimant for his under-reimbursed travel-related expenses at the IRS standard business mileage for the time period from November 1, 2006, to December 7, 2009, for the adjusted amount computed above ($ 9,965.70) and for an equal amount of $ 9,965.70 as liquidated damages provided for under the FMWA for a total sum of $ 19,931.40;

2. The Arbitrator finds that Claimant's Arbitration Submission specifically requested an award of attorney's fees and costs pursuant to both as allowed under the FMWA. In light of Claimant being the prevailing Claimant in this arbitration proceeding, Claimant's attorney is entitled to be awarded his reasonable attorney's fees and other fees and costs of this action to date as follows:

| Time-keener | Hourly Rate | Hours | Amount |
|---|---|---|---|
| Jeremiah Frei-Pearson | $ 325.00 | 224.80 | $ 73,060.00 |
| C. Ryan Morgan | $ 325.00 | 22.15 | $ 7,198.75 |
| Khristoph A. Becker | $ 200.00 | 176.80 | $ 35,360.00 |
| Nadia E. Niazi | $ 200.00 | 9.20 | $ 1,840.00 |
| Kelly D. Casey | $ 175.00 | 80 | $ 14,000.00 |
| Claudia Silva | $ 105.00 | 9.25 | $ 971.25 |
| Total | | 522.20 | $ 132,430.00 |
| Costs | | | $ 1,218.18 |
| Total attorneys' fees and other fees and costs awarded: | | | $ 133,648.18 |

**[*63]**

3. The Respondents, Respondent A and Respondent B, shall pay to Claimant, the sum of $ 19,931.40. The Respondents, Respondent A and Respondent B, shall pay the law firm of Finkelstein, Blankinship, Frei-Pearson & Gerber, LLP, the sum of $ 125,478.18. The Respondents, Respondent A and Respondent B, shall pay the law firm of Morgan & Morgan, P.A., the sum of $ 8,170.00. All of the above referenced sums shall be paid within 30 days of this Award, which sums shall bear interest at the State A Statutory rate if not paid within 30 days of this Award;

MARK POTASHNICK

2015 AAA Employment LEXIS 221, *63

4. The administrative fees of the American Arbitration  Association totaling  Number Redacted 1 and the compensation of the arbitrator   totaling  Number Redacted 2, shall be borne entirely by Respondents. Therefore, Respondents shall reimburse  Claimant the sum of Number Redacted 3, representing that portion of said fees in excess of the apportioned costs previously incurred by Claimant;

5. The Arbitrator  finds that Claimant did not prove a claim of unjust enrichment against Respondents;

6. This final Award is in full settlement of all claims submitted in this Arbitration.  All claims not expressly granted or addressed in this Award are denied **[*64]** and all pending Motions except Respondents' Motion as to the confidentiality of this Award are denied as moot; and,

7. An Order as to Respondents' Motion as to the confidentiality of this Award is being issued by the Arbitrator concurrently with the issuance of this Award.

**DONE AND ORDERED** in City C, County, State A, on this 13th day of August, 2015.

/s/ John Finnigan

John Finnigan

Arbitrator

8/13/2015

**[*65]**

**[*66]**

**[*67]**

AAA Employment Arbitration Awards

---

End of Document

MARK POTASHNICK