UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CORY EDWARDS, et al.,<br><br>*On behalf of themselves and those similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>PJ OPS IDAHO, et al.,<br><br>Defendants. | Case No. 1:17-cv-00283-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiffs' Motion to Compel Production of Email Mailboxes of Individual Defendant Tom Wylie and Forthcoming Individual Defendant Doug Allen and Search Terms ("Motion to Compel"). Dkt. 170. Defendants oppose this Motion. Dkt. 172.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court GRANTS the Motion.

## II. BACKGROUND

Plaintiffs Cory Edwards, James Hollingsworth, Matthew Garber, Seth Thomas

Sweeney, John Carrigan, and Jeffrey Smith (the "Drivers"), at one point or another, worked as pizza-delivery drivers for various Papa John's ("Papa Johns") franchise locations in Idaho, Kentucky, Colorado, Louisiana, Kansas, Minnesota, Tennessee, Virginia, North Dakota, and New York.[1] In their class action suit, the Drivers allege that Defendants have repeatedly violated the Fair Labor Standards Act ("FLSA") and relevant state wage laws by improperly applying a tip credit to delivery driver wages and by failing to adequately reimburse delivery drivers for their delivery expenses. As a result, the Drivers claim Papa Johns failed to pay all delivery drivers the legally mandated minimum wage for all hours worked. While there are many corporate defendants in the instant case, the two individual defendants are of particular mention. Tom Wylie is the sole manager of all the Papa Johns entities in this case. To avoid delving too deeply into the organization of each LLC, for the purposes of the instant motion, it is sufficient to summarize that Wylie also has an ownership interest in some or all of the Papa Johns entities and takes an active role in the operations of each business. Douglas "Dougie" Allen is, or was, the operating partner over all the Papa Johns entities in this case, with the exception of PJ Colorado Springs. Allen also has an ownership interest in PJ Holdings KY, which in turn has an ownership interest in all the other Papa Johns entities at issue here.

The instant motion involves a discovery dispute between the parties. Discovery in this case is focused on determining how Defendants reimbursed the delivery drivers and

---

[1] All the facts come from the Fourth Amended Complaint (Dkt. 184) unless otherwise referenced. Obviously, the facts may evolve as the adjudicative process continues and should not be considered final.

MEMORANDUM DECISION AND ORDER - 2

which individual(s) qualify as an "employer" of the delivery drivers. The Drivers' Motion to Compel seeks the production of (1) the individual email mailboxes of Wylie and Allen, and (2) the application of the following search terms: "(Doug or Dougie) and delivery)"; "mile*"[2]; "mile* and delivery"; "reimburs*"; "termin*"; "Wylie and deliver"; and "Wylie and driver" to 12 custodians of certain records. The parties have met and conferred on several occasions and engaged with the Court in informal discovery dispute negotiations to no avail. The matter is now formally before the Court.

### III. LEGAL STANDARD

Discovery is permitted "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). Relevant information "need not be admissible in evidence to be discoverable." *Id.* A party may move for an order compelling a discovery response pursuant to Federal Rule of Civil Procedure 37(a)(3)(B).

Under Federal Rule of Civil Procedure 37, a party may move to compel discovery responses if, among other things, an opposing party fails to answer interrogatories or produce requested documents. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). "While the moving party must make a threshold showing of relevance . . . the party resisting discovery carries the 'heavy burden' of showing specifically why the discovery request is irrelevant, unduly burdensome, disproportional to the needs of the case, or otherwise improper." *Strojnik v.*

---

[2] The asterisk symbol ("*") denotes a broadening of the search term to include words that begin with the same letters but have different endings. For example, "reimburs*" would locate words such as "reimburse," "reimburses," "reimbursement," and "reimbursed."

*Block 22 LLC*, 2019 WL 6315523, at *2 (D. Idaho Nov. 25, 2019) (cleaned up).

## IV. DISCUSSION

### A. Production of the Individual Email Mailboxes of Wylie and Allen

Drivers have requested that the entire email mailboxes of Wylie and Allen be produced in discovery. Because of the nature of the claims brought by Drivers, the Court grants this request.

The question of who is an "employer" is a contested and critical one to the instant case. The answer to that question affects Drivers' FLSA and state wage law claims in Idaho, Kentucky, North Dakota, Colorado, and New York. Determining who is an employer is not a "check-the-box question" in the instant case because Defendants have taken the position that neither Wylie nor Allen have enough involvement in Defendants' businesses to be "employers." Defendants do not dispute the relevance of the Drivers' request. Rather, Defendants claim that such a request is disproportionate to the needs of the case, would cause an undue burden, and would lead to the production of "highly irrelevant, confidential, proprietary, and personal documents." Dkt. 172, at 4. Furthermore, Defendants claim that the broad nature of the term "employer" in the FLSA does not excuse "Rule 34's requirement to make specific, and precise document requests." *Id*. at 5.

Given the criticality of determining who is an employer, there is no question that the emails are relevant evidence that can be used to determine whether Wylie and Allen are employers in this case. Email is the choice medium of communication for many businesses, and a review of a person's email is an easy way to determine whether that person should be considered an employer. Defendants do not dispute this.

While critical to the instant case, Drivers' request is not trivial, as it will compel the review of approximately 230,000 documents. Defendants explained that

> Defendants have collected nearly 230,000 emails identifying Defendant Wylie or Mr. Allen as the sender or the recipient. Defendants have produced more than 4,800 documents from this collection. Thus if Defendants are ordered to review the data Plaintiffs' have requested, Defendants would review 225,000 additional documents. This review would require an estimated additional 3,050 to 5,450 hours of contract attorney and case team review; for an estimated, additional cost to Defendant of $140,000-$235,000, or two to three times the cost of Defendants' prior review. The review would require 15 people working full time for one to two months.

Dkt. 172, at 6–7. Fulfilling this request for production will require a significant investment of money and manpower. However, Defendants' estimate for the cost of production must be taken with a grain of salt because of how they inflated their estimate of the cost of producing the search terms, as will be discussed in the next section. Additionally, while burdensome, this request is not unduly so. Expensive litigation has unfortunately become a cost of doing business on a large scale.

And while large, this request is proportional to the needs of the case. Although Defendants are correct that the broad nature of the term "employer" does not excuse the specificity requirements of Rule 34, it does inform how narrow a request for production can be. Here, there are a variety of situations in which Wylie and Allen could demonstrate their authority within the company, each of which would contain a different variety of key words and phrases. Consequently, Drivers cannot restrict their search to a specific set of key words and phrases in this situation without hampering their ability to demonstrate that

Wylie and Allen were in positions of authority over the Drivers.[3]

The Court is concerned with how much irrelevant material will be brought in. However, no party offered a viable way to limit irrelevant material, either temporally or subjectively, and so the Court has chosen to err on the side of allowing access to more information than less. The discovered information may be useful to Drivers' claims. It also may be useful to the defenses that Defendants will raise. Additionally, Drivers' search is not completely unlimited. Defendants will be able to redact privileged information following typical discovery procedures. The parties have also agreed to a protective order to protect sensitive business information that may be disclosed in the course of discovery. Dkt. 133.

As such, the request for the entire email mailboxes of Wylie and Allen, *in this situation, with the record that is before the Court*, is as reasonably proportional and particular as it can be. It is not a "fishing expedition," especially given the fact that Wylie and Allen own shares of the PJ entities and were involved in some managerial decisions. Given the criticality of determining who the "employer" is, and the lack of viable alternatives presented to the Court, it is appropriate to compel production of Allen and Wylie's entire email mailboxes.[4]

---

[3] Drivers offered an example of such a situation: "If Wylie and/or Allen emailed delivery drivers, 'No one will be working Thanksgiving. Enjoy the time with your family,' this email would be highly relevant to the 'employer' determination because it pertains to setting drivers' work schedules" even though it doesn't involve any of the key words or phrases that comprise the second part of Drivers' motion. Dkt. 170-1, at 8. This is why Drivers have requested the *full* email boxes.

[4] Of course, nothing in this decision precludes Defendants from claiming an appropriate privilege as to certain emails and producing a privilege log.

### B. Production of Specific Search Terms

Drivers have also requested emails with certain key words that correspond to a number of topics in this case. Drivers' requested search terms return the following results: "(Doug or Dougie) and delivery" (appears in 7,556 documents); "mile*" (34,661 documents); "mile* and deliver" (832 documents); "reimburs*" (4,256 documents); "Wylie and deliver" (2,142 documents); "Wylie and driver" (6,982 documents); and "termin*" (8,769 documents). Dkt. 170-1, at 3. As before, Defendants do not dispute the relevance of the Plaintiff's proposed terms but again argue that the search is disproportionate and will be an undue burden. Defendants propose using the following revised terms that would limit the document population: "deliver w/20 (drive* or car* or order* or reimburse*)" (2,619 documents); "mile* w/20 delivery" (2,595 documents); "mile* w/20 reimburse*" (765 documents); "terminat* w/20 driver*" (209 documents); "deliver w/20 (drive* or car* or order* or reimburse*)" (2,619 documents); and "wylie w/50 driver" (498 documents). Dkt. 172, at 9.

The search terms proposed by Drivers all center around the main question of the instant case—were the Papa Johns drivers properly paid? To determine this, the parties must first review how the Papa Johns drivers were paid. The terms "mile*," "mile* and deliver," and "reimburs*" will be useful in finding emails that explain Papa Johns' methodology for paying its drivers. The terms "(Doug or Dougie) and delivery," "Wylie and delivery," "Wylie and driver," and "termin*" will help answer questions regarding Allen and Wylie's roles in managing the drivers (i.e. whether they can be legally deemed "employers") and the decisions they made affecting the reimbursement of delivery drivers.

MEMORANDUM DECISION AND ORDER - 7

Because these search terms will locate information that is important to the theory of the case, the search terms are relevant.

The search terms are also proportional to the case. Although the term "terminat*" does have a higher possibility than the other proposed search terms of garnering documents unrelated to the case, all seven search terms are reasonably focused on finding only relevant documents. Although there are a significant amount of document results, it stands to reason that a complex case such as this that spans multiple states and multiple corporate entities will lead to more documents in discovery than a simple breach of contract case between two Mom-and-Pop stores. As the search terms are appropriately narrowed, the amount of documents that will be examined here is proportionate to the large and complex nature of the case.

Defendants claim that the Drivers' search terms will be unduly burdensome, pointing to the high cost of producing such information. However, Defendants' cost estimates lacks credibility. Defendants originally claimed that reviewing Drivers' search terms would cost somewhere between $41,000–$63,000. Dkt. 181-1, at 2. Now, however, Defendants claim that such a review would cost between $72,000–$118,000. Dkt. 172, at 8. Even allowing for inflation, rising attorney fees, and errors in the original estimate given to Plaintiffs, the near-doubling in cost makes little sense, and undercuts Defendants' claims that the search is unduly burdensome. Thus, it seems likely that Defendants' actual cost of following such review will not resemble their gloomy prediction of review costs. Defendants' proposed search terms, on the other hand, unduly narrow the scope of discovery and may lead to relevant emails remaining undiscovered. Defendants' proposed

search terms also do not include Allen within the search, which is especially troubling considering that Allen participated in setting the driver reimbursement rates. Dkt. 181-2, at 4. As such, the Court GRANTS Drivers' requests that Defendant's produce documents corresponding to the seven search terms.

## V. ORDER

The Court HEREBY ORDERS:

1. Plaintiff's Motion to Compel (Dkt. 170) is GRANTED as outlined above. The parties shall meet and confer to set appropriate deadlines for production.

DATED: March 16, 2022

_____
David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 9