UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

CORY EDWARDS, et al.,

*On behalf of himself and those similarly situated,*

Plaintiffs,

v.

PJ OPS IDAHO, LLC, et al.,

Defendants.

Case No. 1:17-cv-00283-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Before the Court are cross motions for summary judgment filed by the parties addressing a narrow but critical issue in this case. Dkts. 237, 238. The Court held oral argument on May 30, 2023, and took the motions under advisement. Upon review, and for the reasons below, the Court DENIES Plaintiffs' Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment on the issue of reimbursement.

## II. BACKGROUND

This is a putative hybrid Rule 23 class and 29 U.S.C. § 216(b) collective action. Plaintiffs, who were Defendants' pizza-delivery drivers, assert violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") and various state laws. *See generally* Dkt. 114. Put simply, Plaintiffs assert Defendants underpaid them and/or failed to adequately reimburse them for certain vehicle-related expenses they incurred during their employment.

MEMORANDUM DECISION AND ORDER – 1

On May 15, 2018, the Court conditionally certified a § 216(b) FLSA collective action. Dkt. 67. On June 7, 2022, the Court certified five Rule 23 Classes. Dkt. 225.

At issue today is a question that has been lurking in the background of this case since its inception: what is the correct measurement of reimbursement? This open question has already caused issues with discovery, deadlines, and motion practice. The Court has discussed those issues before. *See, e.g.,* Dkt. 152, at 9 ("Frankly, the Court does not know why the parties did not ask the Court to determine that issue (the legal matter of reimbursement) in this case up front. The Court suggested such a course during its informal discovery dispute conference with the parties in August of 2019; however, this path was not pursued."); *id*. at 15–16 (outlining the competing positions regarding the issue and why resolution was important); Dkt. 225, at 8–9 (noting this question has been "a thorn in the Court's side since the inception of this lawsuit."). In fact, it was this final, most recent matter (Rule 23 Class certification), and the Parties' disagreement regarding scheduling (Dkt. 218), that pushed the Court over the edge. The Court ultimately directed the parties to file briefs regarding "the legal question of reimbursement." Dkt. 218, at 9.

The Parties filed their briefs, the Court held a hearing, and the matter is now ripe for decision.

## III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

*Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (cleaned up). Importantly, the Court does not make credibility determinations at this stage of the litigation. Such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).

In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Zetwick*, 850 F.3d at 441. To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (cleaned up). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

The standard applicable to motions for summary judgment do not generally change if the parties file cross motions. *See, e.g.*, *Cady v. Hartford Life & Accidental Ins.,* 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013). However, the Court must evaluate each party's motion on its own merits. *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

///

# IV. ANALYSIS

## A. Introduction

The question here is how Defendants should calculate the rate of reimbursement for delivery drivers under the FLSA.[1] To reach an answer, the Court must first address two threshold issues.

First, how many options are there to choose from? Both sides agree that the mileage rate established by the Internal Revenue Service ("IRS") is one acceptable option for reimbursement. But Plaintiffs assert it is the *only* option under the circumstances while Defendants counter that it would be equally appropriate to approximate vehicle expenses.

Second, and more importantly, which administrative guidance controls? Both sides agree the Court should defer to the applicable agency—here, the Department of Labor ("DOL")—and its direction on the topic. The DOL, however, has issued two statements on this specific topic, which the parties argue are in tension with each other.[2] Thus, the Parties want the Court to defer to the agency's guidance that supports their position and reject the agency's guidance that is, in their mind, opposite.

The Court begins with the applicable statutes and whether the language is ambiguous. It will then discuss deference to agencies. Finally, the Court will delve into the guidance the DOL has provided and how that affects its decision today.

---

[1] At this time, the Court does not consider whether the amounts paid to Plaintiffs during their employment were adequate, whether Defendants "reasonably" approximated Plaintiffs' expenses, or whether Defendants are even liable in the first instance. The sole issue here is the standard for reimbursement.

[2] As will be explained below, the Court does not see the guidance as conflicting.

## B.  Statutes and Ambiguity

The FLSA requires employers to pay employees at least $7.25 per hour. 29 U.S.C. § 206(a). In certain circumstances, an employer can count some customer tips toward this minimum wage. 29 U.S.C. § 203(m)(2)(a). In either case, however, employers must pay their employees that wage "finally and unconditionally" or "free and clear" of any "kickbacks." *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 530 (6th Cir. 2017) (citing 29 U.S.C. § 206(a) and 29 C.F.R. § 531.35). As the regulation outlines:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kickback" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act. See also in this connection, § 531.32(c).

29 CFR § 531.35. In other words, a kickback occurs when the cost to the employee of tools specifically required for the performance of the employee's work "cuts into" his or her legally required minimum wage. *Id.*

For food delivery workers—such as the pizza delivery drivers here—the "kickback" is the cost associated with delivering food for an employer. Those costs must be fully reimbursed, lest a minimum wage violation be triggered.

Courts have routinely found that personal vehicles operated by pizza employees used to make deliveries qualify as tools of the trade under 29 C.F.R. § 531.35. *See, e.g.,*

*Hatmaker v. PJ Ohio, LLC*, 2019 WL 5725043, at *6 (S.D. Ohio Nov. 5, 2019) (holding that "drivers' cars are tools of the trade."); *Benton v. Deli Mgmt., Inc.*, 396 F. Supp. 3d 1261, 1273 (N.D. Ga. 2019) ("Plaintiffs' vehicles are a 'tool of the trade' when they are used for [Defendant's] business."); *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2018 WL 5800594, *4 (S.D. Ohio Nov. 6, 2018) ("[V]ehicles owned by the delivery drivers are considered 'tools of the trade.'"); *Graham v. Word Enters. Perry,* 2018 WL 3036313, *4 (E.D. Mich. Jun. 19, 2018) ("An example of such an expense are tools of the trade that the employee must provide which is required to perform the job, such as a personal car that an employee operates to make pizza deliveries."); *Perrin v. Papa John's Int'l, Inc.,* 114 F. Supp. 3d 707, 720 (E.D. Mo. 2015) (explaining employees' cars were a necessary tool of the trade because "without them, Defendants could not deliver pizzas, as Defendants lack a delivery fleet of their own.").

Neither party disputes that delivery vehicles are tools of the trade. Instead, they dispute how to reimburse drivers for the use of that tool (i.e., the costs associated with employees' use of their personal vehicles).

Defendants contend the answer lies, unambiguously, in the regulations themselves. They argue § 531.35 specifically incorporates § 531.32(c),  and § 531.32(c) in turn incorporates § 778.217, which discusses that, "as part of the employee's regular rate" the employer may reimburse "the actual or reasonably approximate amount" of the employees travels. In Defendants' estimation, there is no need to go any further. They can simply approximate the amount incurred by Plaintiffs and reimburse them accordingly.

MEMORANDUM DECISION AND ORDER – 6

The Court has two problems with this approach. First, to say these regulations "incorporate" each other is a stretch.

At the very bottom of § 531.35 is the phrase: "See also in this connection, § 531.32(c)." Section 531.32 is entitled "other facilities" and relates to reimbursement for things like lodging and meals. At the very bottom of subsection (c)—after discussing everything from miners' lamps and explosives to chambers of commerce dues and uniforms—the regulation directs that "[f]or a discussion of reimbursement for expenses such as 'supper money,' 'travel expenses,' etc., see § 778.217 of this chapter."

Part 778 is titled "Overtime Compensation" and subsection 217 deals with "reimbursement for expenses." In a list that is "intended to be illustrative rather than exhaustive" the following appears as one of the "types of expenses [that] will not be regarded as part of the employee's regular rate":

> (3) The actual or reasonably approximate amount expended by an employee, who is traveling "over the road" on his employer's business, for transportation (whether by private car or common carrier) and living expenses away from home, other travel expenses, such as taxicab fares, incurred while traveling on the employer's business.

29 C.F.R. § 778.217(b)(3).

Thus, the Court's first issue with Defendants' arguments is that these three subsections lack provisions expressly tying them together. For instance, it would strain logic to say the imprecise "see also" language in Section 531.35 is a clear directive that the proper way to calculate reimbursements to avoid "kickbacks" is found in the referenced section of another referenced section (i.e. two sections later).

Second, the section that purportedly answers the reimbursement question is related

MEMORANDUM DECISION AND ORDER – 7

to "overtime compensation." Subsection (3) addresses professional business travel, i.e. "traveling over the road" and "living expenses away from home." It is not immediately clear how its provisions might apply outside that context. Some of the language appears related to travel outside of the workday—for instance, traveling to conferences or for extended time away from an employee's primary residence—as opposed to traveling during the day "for" work. Some courts have indicated as much. *See, e.g., Clarke v. AMN Servs., LLC*, 987 F.3d 848, 856 (9th Cir.), *cert. denied*, 142 S. Ct. 710 (2021) (discussing how traveling nurses—who *live* away from home—are compensated under the parameters outlined 29 C.F.R. § 778.217(b)(3)).

Other language in the subsection, however—such as that about "traveling over the road on his employer's business"—could be read to apply to food delivery drivers. Indeed, some courts have interpreted it that way. *See, e.g.*, *Rodriguez v. GC Pizza LLC*, 2022 WL 4368353, at *3 (D. Neb. Sept. 21, 2022) (finding that the regulation "contemplates vehicle expenses" such as those incurred by pizza-delivery drivers).

Still yet, the clause "traveling . . . on his employer's business" is couched in terms of being "away from home." Some Courts have limited it to that context. *See, e.g., Sharp v. CGG Land (U.S.) Inc.,* 840 F.3d 1211, 1215 (10th Cir. 2016) (discussing how "traveling," as used in 29 C.F.R. § 778.217(b)(3) means traveling "away from home" to a remote worksite).[3]

Considering that the subsection's overarching purpose is to address overtime

---

[3] The Court found only 20 cases citing this sub-regulation. None conclusively resolved the question of whether it relates to driving while "on the job" or driving outside of work but "for the job."

compensation and *reimbursement* for travel expenses—and that its terms do not squarely encompass local deliveries as "travel"—the Court concludes that the reimbursement described herein does not apply to pizza delivery drivers making routine deliveries as part of their normal, daily job.

To reach Defendants' preferred interpretation, one must stitch three different regulations together. This kind of extended, inferential incorporation is possible with statutes, but it is often difficult to determine whether incorporation between subsections was intentionally or if certain subsections are merely related. Especially where, as here, the references are so vague as to explain how the separate subsections interact, much is left to be desired.

For their part, Plaintiffs argue the regulation is ambiguous and urge the Court to defer to agency guidance pursuant to *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). The Court agrees: the statute is not clear in how it dictates reimbursement. The Court will briefly discuss *Kisor* and why it agrees with Plaintiffs that the regulation is ambiguous.

In *Kisor* the Supreme Court was faced with two primary questions. The first was whether a specific regulation was ambiguous. The second was how much deference to give the relevant administrative guidance after determining the regulation was ambiguous.[4]

As to the first issue, the Supreme Court noted that "[w]hen the legal toolkit is empty and the interpretive question still has no single right answer" the regulation is ambiguous.

---

[4] This is not the first time the Supreme Court has grappled with this question. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) and *Auer v. Robbins*, 519 U.S. 452 (1997) are two of the seminal cases on agency interpretation and deference and are cited heavily in *Kisor*. The court has elected to cite directly from *Kisor* even though these principles grew out of those influential cases.

MEMORANDUM DECISION AND ORDER – 9

*Id*. at 2415 (cleaned up). The Court agrees with Plaintiff in this situation: there is no clear answer on how to reimburse delivery driver expenses under the FLSA. And this is not the situation the *Kisor* court warned of where the Court is simply "wav[ing] the ambiguity flag just because it found the regulation impenetrable on first read." *Id*. The Court (and others like it) have read and analyzed the regulation at issue multiple times. *See, e.g., Parker v. Battle Creek Pizza, Inc.*, 600 F. Supp. 3d 809, 813 (W.D. Mich. 2022) (determining that the statute was "more than simply vague" because it "does not provide any guidance on how to calculate vehicle expenses"); *Waters v. Pizza to You, LLC*, 538 F. Supp. 3d 785, 795 (S.D. Ohio 2021) ("[The] regulation is ambiguous as applied to valuing vehicle expenses"); *Hatmaker*, 2019 WL 5725043, at *4 (S.D. Ohio Nov. 5, 2019) ("29 C.F.R. § 531.35 does not set forth a methodology for calculating mileage rates, or provide any other guidance as to how to determine or put a value on the expenses related to operating an automobile for work. Thus, there is ambiguity as to how to calculate the mileage rate.").

The Court agrees with the analysis in *Parker*, *Waters*, and *Hatmaker*. Without a clear directive otherwise, the answer to the question of reimbursement should not be determined by connecting tenuous dots between three discrete regulations—particularly when it is not established that: (1) the second and third references even apply to the first; and (2) a computation in a regulation about overtime compensation relates to worktime compensation.

The fact that other courts have found the regulation unambiguous does not change the Court's analysis. If anything, it amplifies it. The fact that impartial courts can reasonably come to differing conclusions on whether a regulation is ambiguous seems to

answer the quandary itself: the regulation is ambiguous. Specifically, there are two post-*Kisor* cases that have held 29 C.F.R. § 531.35 is *not* ambiguous. In *Kennedy v. Mountainside Pizza, Inc*., the court followed the regulatory trail and found that the language in the overtime compensation subsection applied to pizza-delivery drivers. It noted the language was "vague, but not ambiguous" and held "the term 'reasonable' allow[ed] the Court the discretion to tailor the regulation to the circumstances before it . . . ." 2020 WL 5076756, at *5 (D. Colo. Aug. 26, 2020). Another Court followed *Kennedy* and reached the same conclusion. *Bradford v. Team Pizza, Inc.*, 568 F. Supp. 3d 877, 882 (S.D. Ohio 2021) (holding "the text and structure of 29 C.F.R. § 531.35—which incorporates 29 C.F.R. § 531.32(c), which in turn incorporates 29 C.F.R. § 778.217—is not genuinely ambiguous as it relates to the costs associated with a pizza delivery driver operating a vehicle for work."). That case is currently on appeal before the Sixth Circuit. Plaintiffs take issue with *how* those courts reached their decisions (by referencing a book by Justice Antonin Scalia) and the fact that other, higher, courts came out differently (at least on how to interpret Justice Scalia's book). The Court does not delve into that dispute today. Suffice it to say, the undersigned respectfully disagrees with the analysis of the *Kennedy* and *Bradford* Courts as to whether the regulation is ambiguous. The fact that those Courts found the regulation allows "tailoring" is concerning. If a regulation can be tailored by a court to fit different circumstances, that seems to be the very definition of ambiguous and would result in a wide variety of outcomes. *See California Pac. Bank v. Fed. Deposit Ins. Corp*., 885 F.3d 560, 574 (9th Cir. 2018) ("Ambiguous regulations include those that are not entirely free from doubt or [are] susceptible to different

interpretations and discretionary elements.").

As a final argument, Defendants assert there is no ambiguity here, just "alternative methods for compliance." Dkt. 244, at 3. Again, the problem with this argument is whether the Court should even reach the "alternative methods," which are not found until two references after the relevant section. 29 C.F.R. § 778.217(b)(3). And even if the Court did get to that point, as just explained, the alternative methods outlined therein are not clear either.[5] In sum, under the framework of *Kisor*, the regulation is ambiguous.

Second, the *Kisor* Court discussed regulatory deference when faced with ambiguous statutes and regulations. This is not a new phenomenon. Regulations failing to address specific, real-world scenarios are "a familiar problem in administrative law." *Kisor*, 139 S. Ct. at 2410. To resolve this problem, the Supreme Court has "often thought that a court should defer to the agency's construction of its own regulation." *Id*. This deference is based on the "presumption that Congress would generally want the agency to play the primary role in resolving regulatory ambiguities." *Id*.

The Court turns next to the allegedly contradictory pieces of DOL guidance to which the parties encourage deference.

## C. Deference (DOL Handbook and Opinion Letter)

Published by DOL as a guide for its Wage and Hour Division ("WHD") investigators and staff—and made public pursuant to the Freedom of Information Act— the Field Operations Handbook ("FOH") discusses the issue of reimbursement. In section

---

[5] *See also Parker*, 600 F. Supp. 3d at 812 ("even assuming 29 C.F.R. § 778.217 applies in this context, the 'reasonably approximate' standard itself is ambiguous.").

30c15, the Handbook states that:

> In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.

> (a) As an enforcement policy, the IRS standard business mileage rate found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes.

U.S. Dep't of Labor, Field Operations Handbook 30c15 (2016), https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/FOH_Ch30.pdf (last accessed July 18, 2023). In other words, companies should reimburse the actual costs incurred by drivers. However, if the employers did not keep record of those costs, the IRS rate *may* be used instead.

Recently, however, DOL issued an "Opinion Letter" on this same topic. In 2020, in response to an inquiry from a pizza-delivery company about how to gauge the appropriate reimbursement rate, DOL stated that its regulations:

> [P]ermit reimbursement of a reasonable approximation of actual expenses incurred by employees for the benefit of the employer *by any appropriate methodology*; the IRS business standard mileage rate is not legally mandated . . . .

Dkt. 239-1, at 8 (emphasis added).

Both parties argue the others' asserted guidance is flawed.

Defendants raise two arguments against the FOH guidance. First, they contend the FOH is not binding and should not be relied upon. Second, they contend the word "may" leaves open the possibility that another method (besides actual expenses or the IRS rate)

MEMORANDUM DECISION AND ORDER – 13

can be used to calculate reimbursement.

Similarly, Plaintiffs raise two arguments against the Opinion Letter. They contend the letter is a skewed perspective because it was solicited by a pizza-delivery company. They also assert it is not DOL's authoritative position on the matter because its analysis is limited and contradicts prior, longstanding guidance to the contrary (the FOH, to be exact).

In sum, Defendants want the Court to use the "up-to-date" guidance while Plaintiffs want the Court to defer to the time-tested, historical guidance.[6] In keeping with *Kisor*, the Court will address each administrative document by considering: (1) whether the interpretation is the agency's "authoritative" or "official position;" (2) whether the interpretation implicates the agency's "substantive expertise;" and (3) whether the interpretation reflects the agency's "fair and considered judgment," not just a "convenient litigating position." *Kisor*, 139 S. Ct. at 2416–18.

Defendants argue the language in the introduction of the FOH outlining "it is not used as a device for establishing interpretative policy," means the information found therein is not legally binding. Dkt. 239 at 13.[7] Plaintiffs counter that the introduction of the FOH also states it was developed "under the general authority to administer laws that the agency is charged with enforcing" and so is worthy of reliance. Dkt. 243, at 9.

---

[6] Complicating matters for Plaintiffs is the fact that both documents come from the same source. Thus, it is difficult for them to argue, on the one hand, that the agency is reasonable when looking at the document that aligns with their interpretation of the statute, but, on the other hand, to argue this same agency is unreasonable when addressing guidance that is unhelpful to its position. Defendants have less of a problem because they assert the FOH letter nevertheless says "may," so it does not hurt their argument as much to accept the FOH letter (in addition to the Opinion Letter).

[7] Defendants point to the companion language in the Opinion Letter that states the "FOH does not establish a binding legal standard." Dkt. 239-1, at 5.

Though the FOH is not binding, courts across the country have used it for years to help determine questions related to DOL regulations, WHD questions, and FLSA matters. *See, e.g., Reyes v. Quality Logging, Inc.,* 2017 WL 10646615, at *8 (S.D. Tex. Mar. 31, 2017) ("Furthermore, although the DOL Field Operations Handbook may not be binding, courts have looked to it as persuasive authority in the FLSA context."); *Marsh v. J. Alexander's LLC,* 905 F.3d 610, 616 (9th Cir. 2018) (holding that DOL's interpretation in the FOH is entitled to deference). Critically, DOL itself has made clear in amicus briefing in other cases that the FOH is interpretive guidance. *See* Br. for the Secretary of Labor as Amicus Curiae in Support of Plaintiff–Appellant at 19, *Romero v. Top–Tier Colo., LLC*, 849 F.3d 1281 (10th Cir. 2017) (No. 16–1057) ("Opinion letters, FOH provisions, and amicus briefs have been among the Department's tools for issuing interpretations of regulations to which *Auer* deference is due.").[8] Thus, contrary to Defendants' assertions, FOH is interpretive guidance the Court may rely on in reaching its conclusion today. *See also California Pac. Bank,* 885 F.3d at 574 ("An agency's interpretation of its own regulation can be advanced through informal means, including an agency manual.").

In like manner, Plaintiffs argue the DOL Opinion Letter is not authoritative because

---

[8] In recent litigation, DOL said in briefing that the IRS rate could be used when calculating vehicle expenses. *See Secretary of Labor, U.S. Dep't of Labor v. Ariz. Logs., Inc.*, Case. No. 2:16-cv-04499-DLR, Dkt. 203 at 20, n. 13 (D. Ariz. Jul. 8, 2020), Dkt. 214 at 11, n. 18 (D. Ariz. Aug. 25, 2020). Plaintiffs contend this means DOL: (1) treats the FOH as interpretive guidance; and (2) knows the IRS rate is the correct measurement. The Court agrees in part. In its *Arizona Logistics* briefs, the DOL did cite to the FOH. This shows some modicum of reliance. When discussing the IRS rate, however, the DOL quoted another case that found the IRS rate was "*an* appropriate method to determine minimum wage violations under FLSA kickback theory." *Id*. at Dkt. 203 at 20, n. 13 (emphasis added). In sum, though DOL did cite to the FOH, and approvingly to caselaw finding the IRS rate was an acceptable choice in that case, it did not tie itself to the IRS rate as Plaintiffs portray.

it was "solicited" by a pizza-delivery company. They assert the timing is also suspect as the request came on the heels of similar pizza-delivery-driver cases wherein Courts found the IRS rate was the only alternative to paying actual expenses. The Court is not persuaded by this argument. Regardless of how the opinion letter came to be, the issue is whether it contradicts the FOH handbook as Plaintiffs suggest.[9] Furthermore, the WHD administrator who authored the letter specifically stated it was "an official interpretation of the governing statutes and regulations" and "may be relied upon." Dkt. 239-1, at 8.

For these reasons, the Court is not persuaded by either party's arguments on this issue. It finds both documents to be authoritative and reflective of DOL's "official position." Additionally, both documents implicate the DOL's substantive expertise because DOL is the organization tasked with setting values for wage items under the FLSA. 29 U.S.C. 203(m)(1). Finally, as will be explained below, the Court finds the interpretation in both documents is reasonable and fair.

Defendants argue that, even if the Court were to rely on the FOH, the guidance uses the word "may," which leaves open the possibility that they can still approximate driver's expenses. The Court agrees.

"The normal reading of 'may' is permissive, not mandatory." *Patterson v. Wagner*, 785 F.3d 1277, 1281 (9th Cir. 2015); *see also* Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts § 11, at 112 (2012) (explaining that "may" is

---

[9] Admittedly, the opening paragraph of the letter states that the requester said it would not use the opinion in "any litigation that commenced prior to [the] request." Dkt. 239-1, at 2. The Court is not implying Papa Johns requested the letter. But the idea that this opinion emerged during this litigation is concerning.

"permissive" and grants discretion). To reiterate the Court's opening point: Defendants agree that the IRS rate *may* be used instead of actual expenses. But unlike Plaintiffs, they claim it is not the *sole* methodology that can be utilized; they can also use an approximation method as suggested in the Opinion Letter and—in their estimation—as alluded to in the FOH.

Plaintiffs counter this is not the case by using the following example: "Imagine if your spouse said, 'please pick up some cookies. In lieu of cookies, you may pick up ice cream.' Bringing a ham sandwich home is not going to work under those instructions, even though the word 'may' was used." Dkt. 246, at 8 n.5. Thus, Plaintiffs further rely on the FOH's "in lieu of" language and posture there is only one thing that can happen in lieu of something else. But is that true? Although a ham sandwich might not satisfy the spouse's request that appears directed at a dessert item, would cake? Does the spouse only want one of two things? Or was the suggested "in lieu of" item a single alternative leaving open the possibility of other acceptable solutions? Such is the difficulty with the "may" language and the "in lieu of" language from the FOH.

And that is why Plaintiffs' grocery store metaphor gets it wrong. First, it jumbles the order of the words. The FOH states that "the IRS standard business mileage rate . . . may be used (in lieu of actual costs and associated recordkeeping) to determine [wages]." "May" precedes the "in lieu of" language. Plaintiffs' metaphor swaps the two, placing "in lieu of" before "may," and necessarily changes the meaning of the sentence. True, if the guidance flatly stated that, *in lieu of* one thing, another thing *may* be substituted, that might mean that it called for a binary, either-or choice. But that is not what this FOH says. Instead,

it instructs that mileage "may be used," before interrupting the thought with an explanatory parenthetical containing the "in lieu of" language.

That leads to the second problem, which is that Plaintiffs' metaphor ignores punctuation. Here, the words "may use" constitute the operative verb of the sentence, while a second phrase, "in lieu of," is set apart from the rest of the sentence by parentheses. The choice of the regulatory agency to cabin this phrase between parenthesis indicates that the phrase is explanatory. It was meant to clarify the context in which the IRS rate could be used, not to be controlling language itself. It would be improper to interpret the sentence as if it had no parenthesis and flatly said, "the IRS rate may be used in lieu of actual costs to determine wages."

Thus, when read in grammatical context, the FOH provides that the IRS rate "may" be used to determine reimbursement. Period. What may it be used in place of? Actual costs. But "in lieu of" cannot properly control the operative—and non-exclusive—word "may."

Thus, contrary to Plaintiffs' (and other courts') interpretation, the Court does not find any tension between the FOH and the Opinion Letter. Plaintiffs want the Court to defer to the older guidance based upon the idea that an agency should not contradict itself. [10] But the Court does not see any contradiction. The FOH states that the IRS rate "may" be used. The Opinion Letter likewise states the FOH's instruction that the IRS rate "may" be used is discretionary but "does not foreclose other methods, such as a reasonable approximation

---

[10] An agency interpretation that "conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 447 n.30 (1987), quoting *Watt v. Alaska*, 451 U.S. 259, 273 (1981); *NRDC v. U.S. EPA*, 526 F.3d 591, 602 (9th Cir. 2008). The Supreme Court has "declined to follow administrative guidelines in the past where they conflicted with earlier pronouncements of the agency." *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 143 (1976).

MEMORANDUM DECISION AND ORDER – 18

of expenses." Dkt. 239-1, at 5. These two documents are not in conflict with one another. In fact, they lead to the same conclusion: there are more than two methods employers *may* use when determining the appropriate rate of reimbursement under the FLSA if they did not track employees' actual expenses. One method is the IRS rate. Another method is a reasonable approximation rate. There may yet be other methods as well (some of which are outlined in the Opinion Letter).

The Court, however, can go no further. Some Courts have. For example, in *Hatmaker*, while noting Papa John's argument that the FOH used permissive "may" language, that court did not address what the implications of that language were. 2019 WL 5725043, at *5. Instead, it determined "the law should provide a clear directive of how to comply with the minimum wage laws" and that the clearest way to do that was to use the IRS rate. *Id*. The Court cannot take that leap. Its duty is to interpret the law as written; not opine on what the law should or should not be or mandate what is the "clearest" way to implement a regulation. The clearest way to interpret an ambiguous regulation is to defer to the agency. The Court has done so here.

## V. CONCLUSION

The Court finds the regulation ambiguous. Any way you slice it, there are open questions and confusion. Thus, the Court yields to the applicable agency guidance.

Both the FOH and Opinion Letter constitute relevant agency guidance. Through the FOH, the DOL expressed a preference for tracking and reimbursing actual expenses. But almost no employers do this. The next best thing appears to be an outside, objective measurement: the IRS rate. This, however, is simply a "may" option—it is not the exclusive

MEMORANDUM DECISION AND ORDER – 19

choice. And the DOL recently re-emphasized in the Opinion Letter that, in addition to actual expense and the IRS standard rate, an employer has other options—including reasonably approximating expenses. Thus, the Court finds there is no discord between the FOH and the Opinion Letter. Both provide that there are multiple options at an employer's disposal when calculating reimbursement. Though reasonable minds can disagree—and they have—the Court finds the DOL's guidance reasonable and will defer to it here. *Kisor*, 139 S. Ct. at 2416 ("Under *Auer*, as under *Chevron*, the agency's reading must fall within the bounds of reasonable interpretation.") (cleaned up).

The Court would not normally opine further. As just noted, its job is to interpret the law. It has done so here. But it feels compelled to mention one final concern.

A few years ago, the Court allowed the Defendants—over Plaintiffs' strong objections—to send out a questionnaire to class members. *Edwards v. PJ Ops Idaho, LLC*, 2020 WL 7502452 (D. Idaho Dec. 21, 2020). The purpose of the questionnaire was to determine if any of the class members had kept records of their expenses during their employment. It was also—by Defendants admission—an opportunity for them to learn more about the drivers' expenses so they could estimate what a reasonable approximation of expenses might be. The Court has only seen a handful of these questionnaires but knows from briefing and discussions with counsel that many, if not most, were returned blank or with very limited information. The Court knew this would be an issue. *Id*. at *11 ("[T]his exercise—even if less than perfect—will prove helpful in this case (and others) regarding the underlying question of whether approximation is an appropriate theory and if so, how to calculate it."). As with many of the Court's predictions in this case, that observation is

coming true.

Though the "reasonable approximation of expenses" may be an appropriate methodology under DOL's guidance, it remains to be seen what constitutes "reasonable," what "approximate" means, and how it ties into the FLSA's regulations. As one Court noted pre-*Kisor*, "neither the regulations nor the FLSA define what constitutes a 'reasonable approximation' in this context." *Perrin v. Papa John's Int'l, Inc.,* 114 F. Supp. 3d 707, 721 (E.D. Mo. 2015). Though the Court today addresses the question of whether there is only one alternative to calculating expenses—and answers it in the negative—it does not address how the rate should be calculated under that alternative option (or any other alternative option for that matter).

Nevertheless, the Court's uncomfortableness with those open questions is of little consequence. Judges, or at least those striving to "avoid the temptation to secure results they prefer," often must "issue judgments with which they disagree as a matter of policy--all because they think that's what the law fairly demands." Neil M. Gorsuch, *Of Lions and Bears, Judges and Legislators, and the Legacy of Justice Scalia,* 66 Case W. Res. L. Rev. 905, 920 (2016). The Court does not necessarily disagree with the outcome today as a matter of policy. It has determined the regulation is ambiguous and that the DOL is in the best position to know how to interpret the regulation it promulgated. *Kisor*, 139 S. Ct. at 2410. It has done its duty in interpreting the law considering that guidance. The Court simply does not like that numerous courts have come down in so many different ways on these critical questions and it does not like that its ruling today leaves other questions unanswered. But such is life when interpreting statutes.

## VI. ORDER

**IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Motion for Summary Judgment (Dkt. 237) is DENIED.

2. Defendants' Motion for Summary Judgment (Dkt. 238) is GRANTED.

3. The Court previously vacated the discovery deadlines in this case. Dkt. 218. The Parties should meet and confer and submit new deadlines to the Court for the remainder of this case. Such deadlines are due within 21 days of the date of this order.

DATED: July 31, 2023

David C. Nye
Chief U.S. District Court Judge