JEFF HEPWORTH (ISB #83702)
J. GRADY HEPWORTH
HEPWORTH LAW OFFICES
2229 W. State Street
Boise, ID 83702
Telephone: 208-333-0702
Fascimile: 208-246-8655
jhepworth@idalawyer.com
ghepworth@idalawyer.com

ANDREW R. BILLER (*Admitted Pro Hac Vice*)
ANDREW P. KIMBLE (*Admitted Pro Hac Vice*)
EMILY A. HUBBARD (*Admitted Pro Hac Vice*)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*abiller@billerkimble.com*
*ehubbard@billerkimble.com*

MARK POTASHNICK (*Admitted Pro Hac Vice*)
WEINHAUS & POTASHNICK
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170
markp@wp-attorneys.com

RICHARD M. PAUL III
PAUL LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone:  (816) 984-8100
Facsimile:  (816) 984-8101
Rick@PaulLLP.com

*Attorneys for Plaintiffs Cory Edwards, James Hollingsworth, Matthew Garber, John Carrigan, Seth Thomas Sweeney, and Jeffrey Smith and those similarly situated*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Cory Edwards and James Hollingsworth, | |
| *On behalf of themselves and those similarly situated*, | Case No. 1:17-cv-283 |
| Plaintiffs, | Chief Judge David C. Nye |
| v. | **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT** |
| PJ Ops Idaho, LLC, *et al*., | |
| Defendants. | |

Plaintiffs Cory Edwards, James Hollingsworth, Matthew Garber, John Carrigan, Seth Thomas Sweeney, and Jeffrey Smith, on behalf of themselves, the FLSA opt-in plaintiffs, and the class of delivery drivers in Idaho, Colorado, Kentucky, New York, and North Dakota have reached a settlement agreement with Defendants PJ Holdings KY, LLC; PJ Ops Idaho, LLC;  PJ Ops Kansas, LLC; PJ Ops Colorado, LLC; PJ Ops Louisiana, LLC; PJ Ops New York, LLC; PJ Operations, LLC; PJ West Fargo, LLC; PJ Falcon Colorado, LLC; PJ Colorado Springs Co Op, LLC; PJ Ops Minnesota, L.L.C.; PJ Acquisitions, LLC; David "Dougie" Allen; and Tom Wylie. (collectively, the "Defendants"). If approved, the Settlement Agreement (attached as Exhibit 1[1]) will resolve the claims asserted in this case. Defendants do not oppose the relief requested herein. Plaintiffs ask the Court to:

    (1) Preliminarily approve the proposed settlement;

---

[1] The Settlement Agreement attached as Exhibit 1 does not contain the parties' signatures. Plaintiffs will provide a fully-executed copy with their Motion for Final Approval or as directed by the Court.

(2) Approve the content, form, and plan for distribution of the class notice;

(3) Preliminarily approve the service award for Plaintiffs' and Class Counsel's request for attorneys' fees and costs; and

(4) Schedule a fairness hearing for approximately 135-150 days after preliminary approval.

Respectfully,

/s/ *Andrew Biller*
Andrew R. Biller (*pro hac vice*)
Andrew P. Kimble (*pro hac vice*)
Emily A. Hubbard (*pro hac vice*)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*abiller@billerkimble.com*
*ehubbard@billerkimble.com*
www.billerkimble.com

Mark Potashnick (*pro hac vice*)
Weinhaus & Potashnick
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170
*markp@wp-attorneys.com*

Jeff Hepworth
Hepworth Law Offices
2229 W. State St. Boise, ID 83702
208-333-0702 (Phone)
208-246-8655 (Fax)
jhepworth@idalawyer.com

JEFF HEPWORTH (ISB #83702)
J. GRADY HEPWORTH
HEPWORTH LAW OFFICES
2229 W. State Street
Boise, ID 83702
Telephone: 208-333-0702
Fascimile: 208-246-8655
jhepworth@idalawyer.com
ghepworth@idalawyer.com

ANDREW R. BILLER (*Admitted Pro Hac Vice*)
ANDREW P. KIMBLE (*Admitted Pro Hac Vice*)
EMILY A. HUBBARD (*Admitted Pro Hac Vice*)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*abiller@billerkimble.com*
*ehubbard@billerkimble.com*

MARK POTASHNICK (*Admitted Pro Hac Vice*)
WEINHAUS & POTASHNICK
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170
markp@wp-attorneys.com

RICHARD M. PAUL III
PAUL LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Rick@PaulLLP.com

*Attorneys for Plaintiffs Cory Edwards, James Hollingsworth, Matthew Garber, John Carrigan, Seth Thomas Sweeney, and Jeffrey Smith and those similarly situated*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Cory Edwards and James Hollingsworth, | |
| *On behalf of themselves and those similarly situated*, | Case No. 1:17-cv-283 |
| Plaintiffs, | Chief Judge David C. Nye |
| v. | **Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement** |
| PJ Ops Idaho, LLC, *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs have reached a settlement agreement with Defendants (also collectively "PJ Ops") to resolve the claims asserted in this case. Because the settlement meets the requirements for approval under Fed. R. Civ. P. 23(e), the Court should preliminarily approve the settlement and facilitate notice to the class members. Following notice and a hearing, the Court will be able to determine whether to approve the settlement.

## II. BACKGROUND

### A. Plaintiffs' Claims

This is a hybrid Fair Labor Standards Act ("FLSA") collective action under 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure 23 class action with five certified classes, including classes of delivery driver who worked for Defendants in Idaho, Colorado, Kentucky, New York,

and North Dakota. The Plaintiffs seek recovery of unpaid wages and damages to remedy violations of the FLSA, 29 U.S.C. §§ 201 *et seq.*, and state wage and hour laws. Specifically, Plaintiffs' alleged various claims arising from several legal theories: (1) PJ Ops violated the FLSA by failing to pay minimum wage after subtracting unreimbursed vehicle costs incurred by its delivery drives in performing the job;; (2) PJ Ops violated the FLSA by failing to pay overtime wages (the "FLSA Collective Action"); (3) PJ Ops violated the Idaho Minimum Wage Law and Wage Claims Act by failing to pay minimum wage; (4) PJ Ops violated Kentucky wage and hour laws, specifically K.R.S. § 337.275, by failing to pay minimum wage; (5) PJ Ops violated Kentucky wage and hour laws, specifically K.R.S. § 337.060, by failing to pay agreed upon wages; (6) PJ Ops violated the North Dakota Wage Collection Act, N.D. Stat. § 34-14-01, *et seq.*, by failing to pay wages owed; (7) PJ Ops violated Colorado wage and hour laws, specifically C.R.S. 8-6-101*, et seq.*, by failing to pay minimum wage; (8) PJ Ops violated New York wage and hour laws, specifically NYLL §§ 650, *et seq.*, for failing to pay minimum wage; and (9) PJ Ops violated New York wage and hour laws, specifically NYLL, Art. 6, § 195(3), by failing to provide accurate wage statements.

Plaintiffs' vehicle cost reimbursement claims stem from the allegation that Defendants employ them as delivery drivers and require them to provide their personal vehicles as a "tool of the trade." *See* Doc. 186 ¶ 293. Plaintiffs also allege that in providing their vehicles as "tools of the trade," the delivery drivers purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, and suffer automobile depreciation for the primary benefit of Defendants. *Id.* at ¶ 295. Plaintiffs allege that the delivery drivers are paid minimum wage minus a tip credit while they are on the road making deliveries and were reimbursed a flat rate for each delivery completed regardless of how many miles the delivery takes to complete or what expenses were actually incurred in the process. *Id.* at ¶¶ 287-288, ¶ 296. Plaintiffs further allege

that this scheme resulted in the drivers receiving reimbursements of about half of the IRS standard business mileage rate per mile, the IRS rate reasonably approximates the costs of owning and operating a vehicle for pizza delivery, and Defendants' conduct results in a violation of state and federal minimum wage laws (nominal wage – unreimbursed vehicle costs = subminimum net wages). *See* Plaintiffs' Motion for Class Certification, Doc. 192, p. 4; Doc. 192-4; Doc. 192-5 (noting PJ Ops' average reimbursement rate ranged from $.24 to $.25 per mile from 2015 to 2020 in Row 3 of Excel Workbook); Doc. 192-7.

The primary question in this litigation is how to value the Plaintiffs' vehicle costs for purposes of determining FLSA compliance. This Court previously held that because Defendants did not track and reimburse actual expenses, "[t]he next best thing appears to be an outside, objective measurement: the IRS rate." Doc. 273, p. 19. Defendants contend that employers meet their minimum wage obligation if they reimburse a "reasonably approximate amount" of their drivers' vehicle expenses. Doc. 239.

If Plaintiffs' position prevailed, the underpayment would trigger a several wage-related claims, including state and federal minimum wage claims and overtime claims. Under either Plaintiffs' or Defendants' calculations, Defendants did not reimburse at the IRS standard business mileage rate or, as Plaintiffs allege, any reasonable approximation of the cost of driving a vehicle for pizza delivery. Based on Plaintiffs' expert analysis, and using IRS rate for each year analyzed, Plaintiffs best-case scenario estimates that the delivery drivers were under-reimbursed by approximately $7,900,000.

If, on the other hand, Defendants' position prevailed, Defendants could potentially prove that either (1) they met the applicable legal standard (meaning the drivers are not entitled to

anything), or (2) any under-reimbursement was minimal, thereby greatly reducing the drivers' damages.

### B.    Procedural History and Current Posture

On July 5, 2017, Plaintiff Cory Edwards filed this wage and hour class/collective action lawsuit against PJ Ops Idaho, LLC, Papa John's International, Inc., and Tom Wylie. Doc. 1. Plaintiff Edwards alleged, and still alleges, that the Papa John's Pizza franchise operation he worked for systematically underpays its delivery drivers as a result of their flawed vehicle and vehicle-expense reimbursement policies. *Id.*

PJ Ops Idaho and Wylie answered the Complaint on August 28, 2017. Doc. 26. In their Answer, PJ Ops Idaho and Wylie provided some details about the other entities involved in the operation of their Papa John's franchise. *Id.* at, e.g., ¶ 4.

In response to this new information, on September 13, 2017, Plaintiff Edwards moved to amend his Complaint to add additional defendants: PJ Holdings KY, LLC, PJ Ops Kansas, LLC; PJ Ops Colorado, LLC; PJ Ops Louisiana, LLC; PJ Ops New York, LLC; PJ Operations, LLC; PJ West Fargo, LLC; PJ Falcon Colorado, LLC; PJ Colorado Springs Co Op, LLC; Corporate Doe Defendants 1-10; and Individual Doe Defendants 1-10. *See* Memorandum in Support of Motion for Leave to File First Amended Complaint, Doc. 38-1. The FAC also removed PJI, Inc., who had been dismissed from the case without prejudice. *Id.*; Doc. 28. PJ Ops Idaho and Wylie did not oppose the amendment (Doc. 44), and the Court granted it on November 6, 2017. Doc. 45.

Shortly thereafter, on February 26, 2018, the Court granted Plaintiffs' unopposed motion to consolidate a case filed in the District of Kansas, *Hollingsworth v. PJ Holdings KY, LLC*, into this one. Doc. 52.

On March 13, 2018, Plaintiffs were granted leave to amend the Complaint to consolidate the allegations and defendants named in this case and *Hollingsworth*. Doc. 61. As a result, two defendants named in Hollingsworth—PJ Minnesota, L.L.C. and PJ Acquisitions, LLC—were added as defendants. Doc. 62.

With the cases now consolidated, Plaintiffs renewed their Motion for Conditional Certification on April 20, 2018. Doc. 64. On May 11, 2018, the parties submitted a joint motion to send FLSA collective action notice. Doc. 65. The Court granted conditional certification on May 16, 2018. Doc. 68.

During the FLSA collective action notice period, over 700 delivery drivers from all of the states where Defendants' Papa John's Pizza franchise operates joined the case. Some of those individuals—Matthew Garber, Seth Thomas Sweeney, John Carrigan, and Jeffrey Smith—sought to assert additional Rule 23 class claims on behalf of their fellow drivers from Kentucky, North Dakota, Colorado, and New York, respectively. On April 10, 2019, Plaintiffs moved for leave to file their Third Amended Complaint. Doc. 111. Defendants did not oppose, and the Court granted Plaintiffs' request on May 3, 2019. Doc. 113.

Over the course of the next two years, the parties were mostly engaged in disputes surrounding the opt-in plaintiffs' discovery obligations, Defendants' email inboxes, and data that ultimately had to be subpoenaed from PJ Ops' franchisor, PJI.

On July 14, 2021, the first Scheduling Order in the case was entered. Doc. 168. In it, the Court set the deadline for amending the pleadings for 6 weeks later—August 27, 2021. *Id.*

On August 27, 2021, Plaintiffs filed the Fourth Amended Complaint. The Fourth Amended Complaint added allegations against Tom Wylie and PJ Holdings KY, LLC, and added David "Dougie" Allen as a defendant. Doc. 171.

On December 6, 2021, Plaintiffs filed their Motion for Rule 23 Class Certification. Doc. 192. On June 7, 2022, the Court granted Plaintiffs' Motion for Class Certification, certifying five classes of delivery drivers, including a class of drivers in Idaho, Kentucky, North Dakota, Colorado, and New York. Doc. 225.  PJ Ops sought interlocutory review of that class certification order, but the Ninth Circuit rejected that request after briefing.

Both sides propounded, and responded to, extensive written discovery requests. Defendants produced extremely voluminous, but incomplete, work time, payroll, delivery address and reimbursement data.  Additional similar data was subpoenaed from PJI.  Through experts, Plaintiffs synthesized that data and calculated class-wide damages, including weekly damage calculations per delivery driver. Plaintiffs deposed 6 PJ Ops' managers at length, some twice. PJ Ops deposed all named Plaintiffs at length. Thus, the parties gained sufficient information and perspective to negotiate.

The parties attended mediation in the summer of 2024, and, thereafter, continued working with the mediator in an effort to reach a resolution. In the meantime, the parties continued with discovery efforts and were preparing to file their expert disclosures. On December 13, 2024, the parties advised the Court that they had reached an agreement in principle based on the mediator's proposal. The parties mediated again in June 2025 to resolve the remaining few issues regarding non-monetary terms of the settlement.

Having finalized that agreement, Plaintiffs now seek preliminary approval and ask the Court to facilitate settlement notice.

## C.    Summary of Key Settlement Terms

The parties have agreed to settle the claims asserted on behalf of delivery drivers employed by Defendants who opted in to the lawsuit as a Collective Action Class Member, as well as the

claims asserted on behalf of the Rule 23 classes for $2,100,00.00.  Settlement Agreement, § 1.25.

The relevant time periods for the classes are as follows:

| Class | Recovery Time Period |
|---|---|
| FLSA Collective Action Class | July 5, 2014 to December 12, 2024 |
| Idaho Rule 23 Class | July 5, 2015 to December 12, 2024 |
| Colorado Rule 23 Class | July 5, 2014 to December 12, 2024 |
| Kentucky Rule 23 Class | July 5, 2012 to December 12, 2024 |
| New York Rule 23 Class | July 5, 2011 to December 12, 2024 |
| North Dakota Rule 23 Class | July 5, 2012 to December 12, 2024 |

*Id*. at § 1.4, 1.19. The net settlement amount will be determined as the gross settlement amount

less deductions for the Settlement Administrator's fees and cost, Court-approved attorney's fees

and costs for Class Counsel, and Court-approved Service Awards to the Named Plaintiffs. The

Class Members' settlement share will be determined based on their prorated share of the total on-

the-road hours worked by the Class Members, as calculated by a Settlement Administrator based

on Defendants' available records. *Id*. at § 1.12. For those class members whose hours are not

reflected in Defendants' records, their hours will be deemed to be the average hours of all other

workers for which information exists. Individuals who opted in to the FLSA claim before the

settlement was reached will have their total on-the-road hours between July 5, 2014, and December

12, 2024, calculated at 1.5x for purposes of calculating their settlement share. *Id*. at § 4.5. Money

that is not claimed by class members will be redistributed to a *bona-fide* charity.

The release is narrowly tailored, as it is limited to claims arising from the facts asserted in Plaintiffs' Complaint. *Id.* at § 8.1. Any class member who does not wish to release their claims may opt out of the settlement within 60 days after the Settlement Administrator mails the Class Notices.

## III. RULE 23 CLASS AND FLSA COLLECTIVE CLASS TREATMENT REMAINS APPROPRIATE.

Class certification is a prerequisite to preliminary settlement approval. *See Spann v. J.C. Penny Corp.*, 314 F.R.D. 213, 219 (C.D. Cal. 2016). Here, the Court has already conditionally certified this case as a collective action and granted Rule 23 class certification for five classes of drivers employed under various state laws. *See* Amended Order Re: Parties' Joint Motion to Approve Stipulated Form of Notice of Collective Action, Doc. 68; Memorandum Decision and Order, Doc. 225. No new information has come to light that undermines the Court's conclusions regarding the appropriateness of those certifications.

## IV. THE COURT SHOULD PRELIMINARILY APPROVE THE PARTIES' SETTLEMENT AGREEMENT.

Rule 23 class actions can only be settled with Court approval and after notice to the class. Fed. R. Civ. P. 23(e). The Ninth Circuit has stated that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig*, 516 F.3d 1095, 1101 (9th Cir. 2008).

Courts overseeing Rule 23 class action settlements follow a three-step process. First, "[t]he parties must provide the Court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Rule 23(e)(1)(A). Second, if the parties can show that the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal," the Court "must direct notice in a reasonable manner

to all class members who would be bound[.]" Rule 23(e)(1)(A). Third, after the notice period, and after a hearing, the Court may approve a class settlement proposal "only on finding that it is fair, reasonable, and adequate," considering the various factors in Rule 23(e)(2).

To determine whether the proposed settlement warrants preliminary approval, the Court must find that the proposal is fair, reasonable, and adequate after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account

   (i)    the costs, risks, and delay of trial and appeal;

   (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

   (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

## A.    Adequacy of Representations and Arm's-Length Negotiations

Settlement was reached after counsel vigorously litigated this matter, with the original Complaint having been filed longer than eight years ago. *See* Compl., Doc. 1. In that time, class counsel has conducted extensive discovery, including issuing subpoenas, conducting and defending depositions, and exchanging written discovery, moved for partial summary judgment, obtained class certification, retained experts, worked with those experts to facilitate damage

calculations, participated in a settlement conference and three mediations, formalized a settlement, and now seek preliminary approval through the instant motion.

Most recently, the parties attended a full-day mediation with an experienced mediator and remained engaged with the mediator in the following months to facilitate negotiations. The parties ultimately both accepted a mediator's proposal, which was made following thorough analysis of the claims, defenses, and risks to both sides in proceeding to trial. The reconvened with the mediator by Zoom when they were unable to agree on some of the non-monetary settlement terms. The course of the proceedings indicates Plaintiffs and class counsel have adequately represented the class in this action and that the settlement agreement was the product of "serious, informed, non-collusive negotiations." *See Spann*, 314 F.R.D. at 319.

**B.    Adequacy of Relief**

The settlement and relief provided are adequate considering the factors set forth by Rule 23(e)(2)(C), including the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, the terms of any proposed award of attorney's fees, and any agreements made in connection with the proposal. Plaintiffs will address each of Rule 23(e)(2)(C)'s factor for consideration in turn.

***The costs, risks, and delay of trial and appeal***: As with litigation generally, there is a risk to both parties in continuing toward trial. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982). "Even a fractional recovery of the possible maximum

recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 611 (E.D. Cal. 2015).

First, the costs and risks associated with proving liability and calculating damages were significant, as the litigation up to this point has demonstrated. The parties reached settlement after over seven years of litigation. While Plaintiffs estimated that the under-reimbursement damages were approximately $7.9 million, the Defendants contend that Plaintiffs' estimate is wrong because it overestimates the number of miles driven and uses the IRS standard business mileage rate. Defendants also contend that the law only requires employers to reimburse the "reasonably approximate" amount of expenses and that their reimbursement practices are compliant with the law. To address this defense, the parties were in the process of expensive expert discovery, which would have likely precipitated expensive legal briefing and potentially a lengthy trial. The additional litigation costs, risks, and delay of trial and appeal favor preliminary approval. Notably, to Class Counsel's knowledge, no similar claim has been tried to a jury, thereby nobody knows how a jury will perceive the claims and defenses. That big unknown presents considerable risk.

Second, there were significant factual disputes regarding the number of miles driven and a lack of complete records that made calculating precise figures for liability and damages complex. Just to determine this foundational fact issue required expensive expert analysis and modeling. Thus, even if the Court ultimately determined that the IRS rate was the appropriate measure of damages, the class's damages could be deemed to be less if the Court or a jury determined that they drove fewer miles than Plaintiffs estimated.

Third, the Defendants have significantly downsized their operations in recent years, having sold most of their operations in the normal course of business. As a result, they were no longer

receiving revenue from several of the entities involved in this litigation. That reality presented substantial risk of non-collectability.

Fourth, Defendants dispute that either Tom Wylie or David Allen qualify as an "employer" under the FLSA and applicable state laws. This dispute required substantial discovery and would necessitate detailed legal briefing into the circumstances of their involvement with the Defendant entities, as "the determination of whether an employer-employee relationship exists does not depend on isolated factors but rather upon the circumstances of the whole activity." *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (internal citations and quotations omitted).

Fifth, whether the individual defendants qualified as "employers" was particularly important in this case because Defendants had sold most of their operations in the normal course of business. Following the Court's order on class certification, they sold approximately 75% of the stores at issue. As just stated, this raises serious collectability concerns.

With these several considerations in mind, the settlement is fair, adequate, and reasonable. The class members will receive approximately 26.5% of their best-case-scenario damage calculation of unreimbursed vehicle expenses before fees and costs are deducted. This is an appropriate result when considering the risk and delay of proceeding to judgment. *See, e.g.*, *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits). "As the Ninth Circuit has noted, 'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is [thus] not to be judged

against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.'

Rather, 'the very essence of a settlement is a compromise, a yielding of absolutes and an

abandoning of highest hopes.'" *In re Toys R US-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 453

(C.D. Cal. 2014) (quoting *Officers for Justice v. Civil Serv. Com'n of City & Cnty. Of S.F.*, 688 F. 2d

615, 624-25 (9th Cir. 1982) (alteration and emphasis in original).

      ***The effectiveness of any proposed method of distributing relief*:** The proposed class notice

meets the standards set forth in Rule 23(c)(2)(B). The notice clearly and accurately describes the

nature of the action, the definition of the class certified, and the class claims and defenses. *See*

*generally* Exhibit 2 to Settlement Agreement, Notice of Settlement. The notice also informs

putative class members that they may enter an appearance through counsel if the member so

desires and explains the binding effect of the release. The notice provides putative class members

with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A) and the

opportunity to opt-out of the settlement. The Court should direct distribution of the class notice

in the manner described in the settlement agreement. *See* Settlement Agreement § 5.

      The distribution of settlement funds is designed to fairly compensate the drivers. Each

drivers' award will be based on the on-the-road hours that they drove.  This is the most equitable

way to divide the settlement fund because those who have larger alleged claims will receive more

of the settlement fund. The Class Members who do not timely opt-out will receive a pro-rata share

of the net settlement amount, and Members who opted-in to the FLSA collective action will

receive an additional .5x their pro-rata amount. This accounts for the risk resulting from the

parties' ongoing dispute regarding the scope of protections provided by the various state laws.

      This factor weighs in favor of approval.

***The terms of any proposed award of attorney's fees***: Plaintiffs' requested attorney's fee award is reasonable. As detailed in Plaintiffs' Motion for Attorney Fees Award, Plaintiffs intend to apply for attorney's fees in an amount not to exceed one-third of the Settlement Amount, $700,000. *See* Plaintiffs' Motion for Attorney Fee Award, Doc. 296. The district court has discretion to choose either percentage-of-the-fund or the lodestar method to determine what constitutes a reasonable fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). District courts within the Ninth Circuit have consistently awarded fees equal to one-third of the total settlement amount in the same claim by pizza delivery drivers. *Compare Yates v. JAK Pizza, Inc.,* Case No. 3:21-cv-01125-YY (D. Or. Dec. 14, 2022) (ECF 33) (Ex. 2) *with* Ex. 3 (Motion for Final Approval of Class Action Settlement and Memorandum in Support (ECF 31) at 12 & 19 (seeking one-third fees)); *Anderson v. Mountain View Pizza, LLC*, Case No. 1:18-cv-00058-SPW-TJC (D. Mont. Apr. 29, 2020) (ECF 118) (Ex. 4) at 4; *Abel v. Austyn Spencer Enters., LLC*, 2020 U.S. Dist. LEXIS 42466, at *3 (D. Mont. Mar. 11, 2020); *Kirkwood v. Noble Food Group, LLC, et al.,* 2019 U.S. Dist. LEXIS 10146, at *3-4 (W.D. Wash. Jan. 22, 2019); *Armes v. Hot Pizzas, LLC*, 2017 U.S. Dist. LEXIS 89920, at *12-19 (D. Ariz. June 9, 2017); *Larson v. Desert Sun Pizza, LLC,* Case No. 3:16-cv-08011-SRB (D. Ariz. Jan. 5, 2017) (ECF 65) (Ex. 5) at 2. This factor weighs in favor of approval.

***Any agreement made in connection with the proposal***: All agreements made in connection with the proposal are detailed in the Settlement Agreement.

### C.    Equitable Treatment

The class members will share in the settlement based on their pro rata share of the total under-reimbursed vehicle expenses suffered by the whole class (as measured by hours-worked as a

proxy for expenses incurred[2]). Those who opted in for FLSA claims prior to the settlement being reached will have their under-reimbursements counted at 1.5× to account for the risk of the parties' ongoing arguments regarding the protections afforded by the various state laws.

## V.    THE SETTLEMENT OF FLSA CLAIMS SHOULD ALSO BE APPROVED.

Like a Rule 23 class settlement, FLSA settlements require Court approval. A proposed FLSA settlement which involves a compromise by an employee will be approved if the court determines that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* "[T]he reason judicial approval is required for FLSA settlements is to ensure that a settlement of an FLSA claim does not undermine the statute's terms or purposes." *Miles v. Ruby Tuesday, Inc.*, 799 F. Supp. 2d 618, 622-23 (E.D. Va. 2011). The same reasons supporting approving the class settlement likewise support approving the FLSA settlement.

### THE COURT SHOULD APPROVE THE CONTENT AND METHOD OF NOTICE.

The settlement agreement provides a proposed notice to be sent to class members by U.S. mail and email. The proposed class notice meets the standards set forth in Rule 23(c)(2)(B). The notice clearly and accurately describes the nature of the action, the definition of the class certified, and the class claims and defenses. *See generally* Exhibit 2 to Settlement Agreement, Notice of Settlement. The notice also informs putative class members that they may enter an appearance through counsel if the member so desires and explains the binding effect of the release. The notice provides putative class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A). The Court should direct distribution of the class notice in the manner described in the settlement agreement. *See* Settlement Agreement § 5.

---

[2] Someone who works more on-the-road hours almost invariably incurs more vehicle expenses than someone who workers fewer on-the-road hours.

## VI.  THE COURT SHOULD SET A HEARING FOR FINAL APPROVAL

The parties request that the Court set a hearing for final approval of the settlement to occur approximately 135 to 150 days after the Court grants preliminary approval of the proposed settlement. This date will allow a reasonable period for the class notices to be mailed and for class members to object or opt-out of the settlement, but it will not unduly delay the case's adjudication. The timeline envisioned for administration is as follows:

| Time | Event |
|---|---|
| Within 15 days of preliminary approval | Plaintiffs will transmit class contact information to Claims Administrator and Class Counsel |
| Up to 60 days after sending the notice | Class members can opt-out or object to the settlement |
| No later than 14 days before the Final Fairness Hearing | Class Counsel will submit an unopposed Motion for Final Approval and Motion for Payment of Attorneys' fees and costs, and Service Awards |
| Approximately 135-150 days after preliminary approval | The Court will hold a final fairness hearing |

## VII. Conclusion

Plaintiffs ask the Court to enter an Order: (1) granting preliminary approval of the settlement; (2) granting final approval of the FLSA settlement; (3) directing distribution of the Class Notice to class members; and (4) setting a final fairness hearing date.

Respectfully,

/s/ Andrew Biller
Andrew R. Biller (*pro hac vice*)
Andrew P. Kimble (*pro hac vice*)
Emily A. Hubbard (*pro hac vice*)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*abiller@billerkimble.com*
*ehubbard@billerkimble.com*
www.billerkimble.com

Mark Potashnick (*pro hac vice*)
Weinhaus & Potashnick
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170
*markp@wp-attorneys.com*

Jeff Hepworth
Hepworth Law Offices
2229 W. State St. Boise, ID 83702
208-333-0702 (Phone)
208-246-8655 (Fax)
jhepworth@idalawyer.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I filed the foregoing electronically through the CM/ECF system, which will serve this filing on the parties and/or their counsel.

_/s/ Andrew Biller_____
Andrew R. Biller